## UNITED STATES v. IMPERIAL CHEMICAL INDUSTRIES, Inc., et al.

United States District Court
S. D. New York.

Jan. 3, 1949.

Leonard J. Emmerglick, Sp. Asst. to Atty. Gen., and Ephraim Jacobs, Atty., Dept. of Justice, of Washington, D. C., for plaintiff.

Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C. (John Lord O'Brien and Gerhard Gesell, both of Washington, D. C., of counsel), for defendant E. I. duPont de Nemours & Co.

Charles E. Hughes, of New York City, for Imperial Chemical Industries, Ltd. (Richard Hogue and Mahlon Doing, both of New York City, of counsel), for defendant.

RYAN, District Judge.

This motion by defendant E. I. duPont de Nemours and Company is addressed to interrogatories served by plaintiff. DuPont asks for time within which to answer certain of the interrogatories and also objects to interrogatory No. 1(f).[1]

---

[1] Interrogatory No. 1 reads: "With respect to each class of products coming within the provisions of the written agreements, referred to in paragraphs 32 to 193 of the Complaint herein, and listed in the appendix attached hereto, list in tabular form under appropriate column headings:

"(a) the United States patents issued to duPont and duPont's pending patent applications, and

"(b) United States patents and pending patent applications assigned or licensed to duPont by any defendant or co-conspirator named in the complaint, and

"(c) The date of issue of each such patent,

"(d) The name of the assignor or li-

We determined at the hearing of the motion that duPont shall answer interrogatories Nos. 1(a) to 1(e) inclusive and 2 by February 15, 1949, and interrogatories Nos. 3 and 4 by January 3, 1949.

We are concerned then only with the objection to subsection (f) of interrogatory No. 1, which reads as follows:

"(f) A designation of whether the invention claimed by the patent was used by duPont or any of its wholly-owned subsidiaries in the commercial manufacture of any product."

The patents included in subsection (f) are those relating to products embraced in the written agreements, and are set forth in subsections (a) and (b) of interrogatory No. 1. They are of two categories:

"(a) The United States patents issued to duPont and duPont's pending patent applications, and

"(b) United States patents and pending patent applications assigned or licensed to duPont by any defendant or co-conspirator named in the complaint, * * *."

DuPont does not object to interrogatory No. 1(f) in so far as it asks for information concerning the patents designated by subsection (b), that is, the patents which have been licensed or assigned to duPont by any alleged co-conspirator. DuPont objects to interrogatory No. 1(f), only in so far as it relates to the patents in subsection (a).

The objection is predicated upon two grounds, (1) that the information sought as to the use or non-use of these particular patents by duPont or its subsidiaries is irrelevant and immaterial to the issues in this action, and (2) that the expense and labor required to assemble the information sought would impose on duPont a burden so great and unreasonable as to outweigh any possible probative value as evidence on the main issues of conspiracy in this case.

"It is not questioned," by duPont, however, "that in a case of this importance evidence which is clearly and certainly relevant to the issues should be produced with little regard for the burden and expense which its compilation may entail. Further, the information requested by this interrogatory need not, in and of itself, be material and relevant evidence which could be introduced at the trial of this case." And, all of this we accept as correct and accurate.

■ Interrogatories may relate to any matter which "appears reasonably calculated to lead to the discovery of admissible evidence." Federal Rules of Civil Procedure, rules 26(b) and 33, 28 U.S.C.A. Meeting this requirement interrogatories are subject to such protective orders, under Rule 30(b) and (d), as may be made when justice requires, to save a party from interrogatories made in bad faith and which serve only to unreasonably annoy, embarrass or oppress.

■ ■ Plaintiff's good faith is not questioned; that the inquiry may incidentally annoy is immaterial, (interrogatories do this frequently); the reasonableness of the interrogatory must be judged in the light of whether it appears "calculated to lead to the discovery of admissible evidence," and must be determined by the relative importance of such evidence. It is to this that we address ourselves.

The complaint alleges a world-wide conspiracy to withdraw the markets of the world, to suppress competition between duPont and Imperial Chemical Industries in the United States and elsewhere, to control the technology involved through an exchange of patents, processes and "know-

---

censor of each such patent, the date of acquisition, and a designation of whether the rights were acquired by license or assignment,

"(e) In case of license, whether it was exclusive or non-exclusive,

"(f) A designation of whether the invention claimed by the patent was used by duPont or any of its wholly-owned subsidiaries in the commercial manufacture of any product.

"Note: Products 'within' the provisions of a written agreement are intended, in these interrogatories, to include all products named or designated in the product descriptions of the agreement and in addition products which the parties, subsequent to the execution of the agreement, treated as being within, or added to, the agreement."

how," and to restrain the foreign and domestic trade and commerce of the United States. It is alleged by way of defense that the challenged agreements between the defendants were valid patent agreements.

It is plaintiff's contention that patents of no commercial value were used to keep Imperial Chemical Industries out of the United States, and that by unlawful use and non-use of duPont United States patents, duPont was able to secure a division of world markets. Proof in support of this contention is admissible within the allegations of the complaint. The extent of duPont's use or non-use of these patents would throw light upon the intent and purpose with which duPont entered into the alleged illegal agreements with its alleged co-conspirators. Intent and purpose are at times most difficult of proof and evidence bearing upon either is to be received with great liberality. A search for proof of intent should not be unduly hampered. The extent to which these patents were commercially used will be of help in determining whether the patents were the inducing reason for the agreements or simply a screen to conceal a hidden purpose to restrain trade. Plaintiff states that it expects to show by the answer to this interrogatory that but a trifling number of these many patents was used. If this hope is fulfilled, it appears that it will have disclosed by the interrogatory evidence of considerable probative value. The interrogatory concerns relevant and material matters, vital to plaintiff's case.

We now consider the reasonableness of the extent and scope of the interrogatory.

When preparing its answer to interrogatories No. 1(a) to 1(e) inclusive, duPont must set out its patents, stating whether they were duPont developments, or acquired by license, and if so the nature of the license. This will, of necessity, entail an examination of all its patents. All that is further required by interrogatory No. 1(f) is that information be given as to whether the United States' patents issued to duPont, and pending patent applications, were used by it in the commercial manufacture of any product. This does not appear to be unreasonably burdensome, when considered with its relevancy to the issues and the ever present possibility that it will result in the discovery of admissible evidence.

DuPont points out that all of this can only be accomplished by personal inquiry of duPont employees at its various manufacturing plants, because "there are no records available which contain this information." It taxes credulity almost beyond bounds to hear that in the entire duPont organization information concerning the use of these patents rests not in recorded writings but solely in the memory and recollection of mortal employees. Be that as it may, it does appear that within the last several months duPont placed upon the United States Register some 4,500 patents. Common sense urges that at least in regard to some (if not most) of these patents, consideration was given to commercial use, past as well as present.

This interrogatory, duPont states, will cover classification of approximately 8,000 patents and 1,700 applications according to commercial use. This is truly an impressive and overwhelming number. The task would be incapable of performance by a smaller business venture, but duPont is alleged to be a world-wide business organization and a vast enterprise, which has during a period of the last 45 years, produced, manufactured and marketed some 4600 different products. The complaint alleges that duPont is "by far the largest manufacturer of chemical products in the United States, and has total assets of approximately one billion dollars." When considered in the light of operations of such magnitude, the interrogatory is not unduly burdensome.

It is suggested that knowledge of the commercial use of some of these patents may no longer be available, having gone with the passing of former employees and that others, at one time in duPont's employ, may be unable to be located. Should this be so and information as to any particular patent, after thorough and diligent efforts have been made, be unobtainable, as to such patent or patents, duPont may so state un-

der oath, setting forth in detail the efforts which it made.

The objection to plaintiff's interrogatory No. 1(f) is therefore overruled. Defendant duPont is directed to answer not later than April 11, 1949.

Settle order on notice.