John Joseph HESSELBINE, as Executor for the Estate of Jane Louise Hesselbine, Plaintiff,

v.

Eleanor von WEDEL, Defendant.

Civ. No. 67–301.

United States District Court
W. D. Oklahoma.

March 26, 1968.

Gerald A. Kay, Denver, Colo., W. K. Garnett, Oklahoma City, Okl., for plaintiff.

Roger H. Swan and Solon W. Smith, of Smith, Leaming & Swan, Oklahoma City, Okl., for defendant.

## ORDER

DAUGHERTY, District Judge.

Plaintiff has filed Interrogatories and Requests for Admission pursuant to Rules 33 and 36, F.R.Civ.P., 28 U.S.C., to certain of which Defendant has made objection on the grounds of privilege and relevancy.

■ Defendant asserts that the matters comprehended by Interrogatory No. 6 and Request for Admission Nos. 9A, 9B, 29A, and 29B are privileged matters not subject to discovery under Rule 33 and 36. The privilege claimed is that of the attorney-client relationship.[1] Although there are statutes in

both Oklahoma and Colorado concerning this privilege, the law applicable to this question is that of the federal courts.[2] This privilege extends to communications of the client to his attorney as well as to those of the attorney to his client.[3] Finally, the scope of the asserted privilege is that of the law of evidence.[4]

■ On the basis of these principles, it is clear that Request for Admission Nos. 9A, 29A, and 29B seek information which is privileged.[5] Each of the Requests, if affirmatively answered, would reveal what the Defendant had been advised to do by her retained counsel. Plaintiff claims that the privilege has been waived by communications of the Defendant or her attorneys with Plaintiff or his attorney. Reviewing the very extended statement of facts submitted with Plaintiff's brief and all of the exhibits attached thereto, as well as exhibits attached to Plaintiff's Requests for Admission, the Court is unable to find that this particular advice—to turn over the estate assets—was mentioned in writing by anyone but the Plaintiff or his attorney.[6]

■ Request for Admission No. 9B and 29, and Interrogatory No. 6 seem-

---

1. VIII Wigmore on Evidence (McNaughton rev. 1961) § 2292, p. 554:
   "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

2. 2A Federal Practice and Procedure, Barron & Holtzoff (Wright Ed.), § 651, p. 94; 23 Am.Jur.2d § 169, p. 509.

3. 58 Am.Jur. § 483, p. 270.

4. United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, 32 A.L.R. 2d 382 (1953); 23 Am.Jur.2d § 169, pp. 507–508.

5. Request for Admission No. 9A: "That the Defendant repeatedly received advice from her attorneys, both Solon W. Smith and members of his firm together with that from Clarence Ireland of Denver that all of the assets in the Defendant's hands must be turned over to the Plaintiff as the duly appointed Executor of the estate of Jane Louise Hesselbine for administration in Colorado."
   Request for Admission No. 29A: "Eleanor von Wedel was advised by her Denver counsel that she must return the assets over to Colorado for administration. That otherwise she would risk a lot of litigation."
   Request for Admission No. 29B: "That Defendant was assured by her Denver counsel that if she complied with the request and the assets were turned over to the trust officer of the Central Bank and Trust Company at Denver, with which Mr. Clarence Ireland had relationship, that none of the assets would be delivered over unless in accordance with court instructions."

6. Reference to certain conversations on this subject appear on page 12 and page 16 of Plaintiff's brief. This is not the proper method of offering such evidence.

ingly seek the existence of genuineness of documents, but it is the Court's view that they go further and seek in terms privileged information.[7]

In the case of Request for Admission No. 29, the genuineness of the attached document is not asked, but rather whether a communication took place between the attorneys for Defendant. If such a communication were to take place between attorney and client, and be privileged, of necessity a communication between two attorneys, both retained by the client, must be included in the privilege.

In the case of Request for Admission No. 9B and Interrogatory No. 6, the description of the letters is so written as to constitute the privileged information sought.

■ Turning now to the objections based on relevancy, the permissible scope of interrogatories is set out in Rule 26(b), F.R.Civ.P., 28 U.S.C. The most difficult task is to apply the limitations inherent in the Rule's expression, "relevant to the subject matter involved in the pending action." Generally, the Court should confine itself to matters in-

volved in the pleadings,[8] and only require answers involving factual matters as opposed to opinions, conclusions or legal matters.[9]

In this case, the subject matter involved is the assets of the estate of Jane Louise Hesselbine, recovery of which is sought on a theory of conversion by the Defendant. Both actual and exemplary damages are claimed.

■ Interrogatory No. 18, not being related to the subject matter described above, is objectionable.[10] Plaintiff explains that he seeks to establish whether the wills of Dr. and Mrs. von Wedel are joint and mutual. It appears that under both wills, Plaintiff's daughters, who are grandchildren of Mrs. von Wedel, are residuary legatees. If, as Plaintiff points out, the two wills are mutual, Mrs. von Wedel's will may be irrevocable as to the grandchildren but in no way affects the estate of Jane Louise Hesselbine. Thus, it appears that the wills of Dr. and Mrs. von Wedel are not involved in this action. Recovery of assets of the estate is the matter in controversy and interrogatories must be restricted to it.

7. Request for Admission No. 9B: "That the Oklahoma Counsel for the Defendant received a letter from his Denver correspondent demanding that all the Oklahoma assets be forwarded to Denver to be placed either under a surety bond to the Plaintiff or a joint control with the Defendant's Denver attorney and his office. That Mr. Ireland, counsel for the defendant in Denver, repeatedly asked Mr. Smith of Oklahoma to get the assets to the Colorado jurisdiction.

   Request for Admission No. 29: "That the Defendant and Defendant's Oklahoma counsel were advised by their Denver counsel that the letter of demand or request, Exhibit J attached hereto, was identical with what had been agreed in the office of Gerald A. Kay on November 14, 1966."

   Interrogatory No. 6: "Can you or your Oklahoma attorney produce letters from Clarence Ireland, the Defendant's attorney in Denver, showing that the later had made request to your Oklahoma attorney for the production of in-

ventory to the Plaintiff, the turning over to the Plaintiff of the personal assets, which letters were written the latter part of 1966?"

8. Bullard v. Universal Millwork Corporation, 25 F.R.D. 342 (N.Y.1960); Kainz v. Anheuser-Busch, Inc., 15 F.R.D. 242 (Ill.1954).

9. Alaska v. The Arctic Maid, 135 F.Supp. 164 (Alaska, 1955); Bullard v. Universal Millwork Corporation, supra, note 8. Cf. United States v. Columbia Steel Co., 7 F.R.D. 183 (Del.1947); General Motors Corporation v. California Research Corp., 8 F.R.D. 568 (Del.1948).

10. Interrogatory No. 18: "Did Eleanor von Wedel execute a will on or about the same time as that of her husband, Dr. Curt von Wedel, Jr.? A. If so, what date was it executed? B. If so, can a copy be produced for the Plaintiff? C. Did the Defendant, Eleanor von Wedel execute any codicils or other wills since the making of a will near the date that Dr. von Wedel made his?"

Plaintiff also urges that, as exemplary damages are involved, inquiry into the personal wealth of the Defendant is proper. While this may be the law,[11] the Court is unable to see how the Defendant's will and any codicils or other wills executed by Defendant must indicate her financial condition.

■ Plaintiff's further reasons for requiring response to the interrogatory are not illuminating.[12] It is true that great latitude is permitted where intent and motive are involved.[13] But here, what is involved is the intent of the Defendant in retaining the assets of the estate of Jane Louise Hesselbine and converting them to her own use, and not her intentions with respect to the disposition of her own property.

■ For the same reasons, Interrogatory No. 35 and Request for Admission No. 34B are found objectionable.[14] The Court is not shown in what manner these trusts form part of the estate of Jane Louise Hesselbine.

■ Interrogatory No. 31 is too broad in scope.[15] As it appears that Defendant has provided an answer concerning expenditures made from the accounts of Jane Louise Hesselbine, it will be confined to the scope of the answer given.[16]

■ The last interrogatory to which Defendant objects[17], calls for the opinion or conclusion of the Defendant as to the mental operations of her husband. An interrogatory calling for the Defendant's "understanding" of a term used in an invoice involved in a suit for conversion was held irrelevant on the ground that it required a statement as to the defendant's mental operations.[18] In the present case, the interrogatory calls upon the Defendant to offer her conclusions as to the state of mind of her husband in executing a codicil to his will. While

---

11. Blankenship v. Rowntree, 219 F.2d 597 (Tenth Cir. 1955); Bracket v. Woodall Food Products, 12 F.R.D. 4 (Tenn. 1951).

12. On page 20 of Plaintiff's brief: " * * * it is reasonably believed that her motives and intention which the Plaintiff believes to involve the basis for exemplary damages are closely connected by reason of Defendant's possible entitlement to the corpus under the Last Will and Testament of Curt von Wedel, Jr. This closely involves, also, possible reasons why Defendant refuses to surrender the assets to Plaintiff. Certainly the Defendant's motives and intentions will be admissible evidence.

13. "Intent and purpose are at times most difficult of proof and evidence bearing upon either is to be received with great liberality. A search for proof of intent should not be unduly hampered." United States v. Imperial Chemical Industries, Inc., 8 F.R.D. 551, at 553 (N.Y.1949).

14. Interrogatory No. 35: "When did the First National Bank and Trust Company of Oklahoma City terminate Trust No. 1 being Paragraph 4.b in Article IV, Section 4.02 of the Last Will and Testament of Curt von Wedel, Jr.? A. What was the initial value of Trust No. 1?

B. What was the value set up for Trust No. 3? C. What has been the yearly net income paid to the Defendant from Trust No. 3 since the death of Curt von Wedel, Jr.? D. Has the corporate trustee paid any part of the principal from Trust No. 3 to Defendant?"

15. Interrogatory No. 31: "Since the death of Curt von Wedel Jr., what sums of money has Defendant paid to or for the use of Curt von Wedel III for each year since the death of the father?"

16. It is within the discretion of the Court to limit the scope of interrogatories, as opposed to striking them altogether. See Frey v. Chrysler Corporation, 41 F.R.D. 174 (Pa.1966); and Eaddy v. Little, 235 F.Supp. 1021 (S.Car.1964).

17. Interrogatory No. 34: "Do you know the reason why Curt von Wedel, Jr. executed the codicil to his own will of March 16, 1962, whereby the son, Curt von Wedel III was to receive nothing under the will of Curt von Wedel, Jr. under the trust that had been set up in the latter's will and had been made to benefit the decedent, Jane Louise Hesselbine and her heirs?"

18. Bullard v. Universal Millwork Corporation, note 8, supra.

the intentions and motives of the Defendant insofar as the properties of the estate of Jane Louise Hesselbine may be relevant, those of her husband, who is not a party, are not. His action in executing the codicil cannot give rise to any legal right of Plaintiff within the confines of this suit. Cf. United States v. Hodge, 89 F.Supp. 25 (Tenn. 1949), where interrogatories pertaining to the housing policy of the United States government were held irrelevant in view of the fact that such policies created no legal right to defendant to continue occupancy of the house from which he was being ejected.

The Defendant's Objections to Interrogatories and Requests for Admissions are therefore sustained.