INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation, Plaintiff,

v.

UNION CARBIDE CORPORATION, a New York corporation, Gordon Irvine, Tom Dan Davis, George E. Dilts and Julian P. Hancock, Defendants.

Civ. A. No. 7851.

United States District Court
D. Colorado.

July 28, 1964.

Wood, Ris & Hames, Thomas T. Crumpacker, Denver, Colo., for plaintiff.

Weller, Friedrich & Hickisch, William H. Hazlitt, Denver, Colo., for defendant Union Carbide Corp.

Zarlengo, Zarlengo & Seavy, V. G. Seavy, Jr., Denver, Colo., for defendants Tom Dan Davis, George E. Dilts and Julian P. Hancock.

DOYLE, District Judge.

Pursuant to this Court's order of June 23, 1964, the defendants have submitted for *in camera* examination their attorney-client correspondence files relating to Civil Action No. 8618 in the District Court in and for the County of Montrose, Tom Dan Davis v. Union Carbide Corp. and Gordon Irvine. The Court has undertaken an examination of the correspondence in question to determine whether it is subject to discovery attempted by the plaintiff pursuant to Rule 45(d), F.R.Civ.P.

Three law firms appear to have been directly involved in the Montrose County action. Dilts & Hancock represented Tom Dan Davis, the plaintiff in that action, who had previously received workmen's compensation, and appear to have been authorized also to represent the interest of the plaintiff in this action, the Insurance Company of North America, the workmen's compensation insurance carrier which had previously made payment to Tom Dan Davis. Coit & Graham represented Gordon Irvine, one of the defendants in that action, and the Standard Accident Insurance Company, Irvine's insuror. Tilly & Skelton represented Union Carbide Corporation, the other defendant in that action, and Aetna Casualty and Surety Company, the insuror of Union Carbide.

In its order of June 23, 1964, this Court has already ordered production of certain correspondence between the three law firms directly involved and between Dilts & Hancock and the defendants in the Montrose County action. The communications between Tilly & Skelton and Coit & Graham, who were defending separate defendants with parallel interests, might possibly have embodied the work product of those attorneys. Inasmuch as the interests of the two separate defendants in the Montrose County action were potentially adversary, however, probably leading their attorneys to deal at arm's length, and since the communications between the law firms were not privileged, it was concluded that the interest of the Insurance Company of North America in discovering what agreement, if any, was made between the three law firms with respect to dealing with the subrogation interest of the Insurance Company of North America in the Montrose County action outweighed the interest of Tilly & Skelton and Coit & Graham in withholding from disclosure their entire correspondence files because some evidence of their strategy might have been reflected in correspondence between them. The remaining question concerns the discoverability, in this action, of correspondence passing in confidence between the

parties to the Montrose County action (and their insurors) and their respective attorneys.

■ It has been asserted by the defendants in this action that the correspondence in question is privileged to the extent that it was confidential because of the attorney-client relationship which evoked the exchange of information and advice embodied in that correspondence. The plaintiff in this action asserts, however, that only confidential communications from client to attorney, but not communications from attorney to client, are privileged; and that communications from attorney to client are discoverable work product of the attorney. The attorney-client privilege is not so circumscribed as plaintiff asserts, however. Both confidential communications made by a client to his attorney and his attorney's advice and reports to him are privileged, and immune from discovery.

■■ Documents of yet another class, although not privileged, are discoverable only upon an exceptional showing of good cause. That is, documents embodying the mental impressions of counsel, his legal conclusions, factual analysis, and strategy. Even though this second class of documents (those which embody the work product of a lawyer) are not privileged they are normally not discoverable because of a strong public policy of preserving inviolate the plans and analysis of counsel in preparation for trial. The underlying rationale for permitting discovery of an attorney's work product only in exceptional circumstances has its roots in the realization that, as the Supreme Court's opinion in Hickman v. Taylor, 329 U.S. 495, 510–511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947), put it, " * * * it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." The test properly to be applied is one which takes cognizance of the demoralizing ef-fect on the legal profession of unanticipated inquiry into the workings of an attorney's mind in defense of his client's interest. We hesitate to take a step—ordering an attorney to open indiscriminately his files to examination—which could only have the ultimate effect of inhibiting counsel's freedom to reduce his impressions, speculations and plans to writing. As the Supreme Court observed in Hickman, supra: "Were [documents embodying an attorney's work product] open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

■ The rationale which compels that we be extremely reluctant to invade an attorney's files is scarcely less applicable to a case which has been closed than to a case which is still being contested. Adversary counsel in an active case, obviously, should not normally be free to force his opponent to reveal his strategy; but neither should counsel in a closely related subsequent case, albeit between different parties in part, obtain *carte blanche* to examine an attorney's files in the former case. Should discovery of an attorney's work product in a former case ever be generally or indiscriminately permitted counsel would undoubtedly feel constrained to leave unwritten and unrecorded many of their impressions and plans which they should feel free to reduce to writing.

A single reported case, Hanover Shoe, Inc. v. United Shoe Machinery Corp., 207 F.Supp. 407 (M.D.Pa.1962), could arguably be relied on for the proposition that

the work product of an attorney in one case is routinely discoverable in a subsequent action between different parties. In the former case there involved the United States had brought a civil action under the anti-trust laws against the United Shoe Machinery Corporation. In connection with that litigation an officer of United Shoe, in the presence of United Shoe's attorneys, had taken a statement from an officer of Hanover Shoe, one of the customers of United Shoe. That statement was embodied in a report prepared by the attorneys for United Shoe. In subsequent litigation Hanover Shoe instituted a treble-damage action against United Shoe, and sought discovery of the attorney's report embodying its officer's prior statement. No general search of the attorney's files was sought, however, and the crucial, specific document sought was in actuality the prior statement of the person who was seeking to obtain an exact record of his former statement, which was, apparently, not available from any other source. Such revelation of an attorney's analysis as was ordered in that case was, in our view, merely incidental to the legitimate attempt of the person who had made a statement in the presence of his supplier's attorneys to accurately re-create his own statement for use in his subsequent suit against his supplier. The fact that the memorandum containing the statement in question was prepared by United Shoe's attorneys in the former case, and incidentally contained their analysis as well as the verbatim statement, is not persuasive that Hanover Shoe stands for the general principle that an attorney's file in a previous case can be examined at will by litigants in subsequent, related cases. Neither does Gulf Construction Company v. St. Joe Paper Co., 24 F.R.D. 411 (S.D.Tex. 1959) stand for that principle. Although it is difficult to ascertain from that opinion what the documents in question were, it seems that they were either deemed to contain work product, along with other information, and were discoverable because of the existence of exceptionally good cause, or, possibly, that they were discoverable because they did not embody the analysis, impressions, and strategy of an attorney at all.

If documents in the correspondence files now sought to be discovered are privileged because they are confidential attorney-client communications they are immune from discovery. If they are non-privileged but yet embody the work product of attorneys in a related former case they are discoverable only on an exceptional showing of good cause. Our *in camera* examination of the documents in question reveals that they are genuinely confidential communications between attorney and client. The suggestion is made by the plaintiff that he should be free to examine these files nonetheless because he alleges that the attorneys in the Montrose County case "conspired" one with another to deprive the plaintiff insurer of its right to be subrogated to the tort claims of Tom Dan Davis against Union Carbide and Gordon Irvine. In answer to that contention it is first necessary to note that the purported allegation of civil conspiracy adds nothing to the plaintiff's complaint. It is alleged that the defendants "conspired", but it is not the fact that they "conspired"—if they in fact did so—that forms the basis of any possible claim which the plaintiff might have. The plaintiff's claim must rest on the assertion, rather, that each of the defendants acted to deprive the plaintiff of its right to be subrogated to Davis' claims. The mere fact that "conspiracy" is alleged in a civil action does not, without more, override the strong public policy which dictates 1) that confidential communications between attorney and client remain absolutely inviolate and 2) that an attorney not be inhibited in reducing to writing for his own purposes his analysis, impressions, and strategy. The allegation of "conspiracy" made here does not constitute an exceptional show-

ing of good cause why documents which are normally not discoverable should be ordered produced. The Court has already ordered that non-privileged correspondence between the lawyers involved in the Montrose County action be produced, thus compelling the exposure of counsel's work product in some measure. This was done, as we have already noted, because it seemed that the plaintiff's interest in determining (from non-privileged correspondence passing between the attorneys) whether any agreement of the sort alleged did in fact exist between the attorneys provided sufficient good cause to order production of non-privileged documents even though they might embody the work product of those attorneys.

█ The documents before us now, however, are not merely non-privileged documents which embody the work product of an attorney—which can be ordered produced on an exceptional showing of good cause. They are, rather, we conclude upon examination, genuinely privileged communications which are immune from discovery. Even if they were regarded as non-privileged work product, however, we would conclude that no sufficient good cause has been shown why further production of the attorneys' correspondence (beyond that already produced) should be ordered. We have carefully examined every letter in the files and are fully cognizant of the plaintiff's contention that it is the work product of these attorneys which is the very subject matter of this action. We intimate no view with respect to what this correspondence reveals or fails to reveal. We conclude only that the documents submitted for *in camera* examination are genuinely confidential privileged communications between attorney and client, which are immune from discovery. It is therefore

Ordered that plaintiff's motion for production of documents consisting of communications between the parties to the Montrose County action and their in-

surors, on the one hand, and their respective attorneys, on the other, as contained in the files submitted for *in camera* examination, be, and the same is hereby, denied.