**KEARNEY & TRECKER CORPORA-TION, Plaintiff,**

v.

**GIDDINGS & LEWIS, INC., Defendant.**
**Nos. 66–C–360, 67–C–113.**

United States District Court
E. D. Wisconsin.
March 3, 1969.

See also, 285 F.Supp. 483.

Quarles, Herriott, Clemons, Teschner & Noelke, by John R. Collins, Milwaukee, Wis., for plaintiff.

Foley, Sammond & Lardner, Adrian L. Bateman, Jr., Milwaukee, Wis., for defendant.

## OPINION

MYRON L. GORDON, District Judge.

The defendant has moved under rule 34, Federal Rules of Civil Procedure for production of documents which are identified in answers to interrogatories. These documents, which are in the possession of the plaintiff, have been broken down into ten categories and relate to the following issues: validity or infringement of the Brainard patent, overlap between the Brainard and Morgan patents, implied license, unenforceability of the Brainard patent by reason of "unclean hands" and other inequitable conduct on the part of the plaintiff, and various antitrust contentions. The documents are approximately 200 in number.

The plaintiff resists the defendant's motion on the grounds of attorney-client privilege and work product privilege. In addition, the plaintiff seeks a protective order to limit discovery of certain documents which are not privileged, but which are "extremely sensitive".

## I. ATTORNEY-CLIENT PRIVILEGE

In Wisconsin, the attorney-client privilege is defined by statute: Sec. 885.22 Wis.Stats. (1967). However, it is often difficult to apply the privilege to specific communications. See Jacobi v. Podevels, 23 Wis.2d 152, 127 N.W.2d 73 (1964). It is particularly difficult when the court does not have before it the specific writings which are claimed to be within the privilege.

The general rules relative to the application of the privilege were examined in United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 358 (D.C.Mass.1950). The application of the privilege to patent matters was considered in the case of Zenith Radio Corporation v. Radio Corporation of America, 121 F.Supp. 792, 794 (D.C.Dela. 1954).

A number of other cases have weighed the use of the privilege in patent cases.

In such cases, a distinction is frequently made depending on whether the legal work was performed by "outside counsel" or "inside counsel"; other cases turn on whether the attorneys could be said to be "acting as lawyers" in connection with patent matters. Sperti Products, Inc. v. Coca-Cola Co., 262 F. Supp. 148 (D.C.Dela.1966); Chore-Time Equipment Co. v. Big Dutchman, Inc., 255 F.Supp. 1020 (W.D.Mich.1966); Garrison v. General Motors Corp., 213 F.Supp. 515 (S.D.Calif.1963); and Georgia-Pacific Plywood Co. v. United States Plywood Corp., 18 F.R.D. 463 (S.D.N.Y.1956).

The court is not persuaded that the communications in question represent confidential disclosures between the plaintiff and its attorneys. Accordingly, the record does not warrant the insulation of the attorney-client privilege. The attorney-client privilege, having a tendency to prevent the full disclosure of the truth, "ought to be strictly construed within the narrowest possible limits consistent with the logic of its principle. Radiant Burners, Inc. v. American Gas Assoc., 320 F.2d 314, 323, 98 A.L.R.2d 228 (7th Cir. 1963), quoting with approval from Dean Wigmore.

## II. WORK PRODUCT PRIVILEGE

The plaintiff resists discovery on the further ground of "work product immunity" under Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). While the work product doctrine is closely related to the attorney-client privilege because the work product represents efforts expended by the attorney during the course of the attorney-client relationship, Lundberg v. Welles, 11 F.R.D. 136, 138 (S.D.N.Y.1951), the two concepts are treated quite differently and, in the eyes of the law, are independent legal concepts reflecting different policy considerations. Radiant Burners, Inc. v. American Gas Assoc., supra; Transmirra Products Corp. v. Monsanto Chemical Co., 26 F.R.D. 572 (S.D.N.Y.1960).

In Scourtes v. Fred W. Albrecht Grocery Co., 15 F.R.D. 55, 58 (N.D.Ohio 1953), the court explained the different policies of these doctrines as follows:

"* * * The purpose of the attorney-client privilege is to encourage full disclosure of information between an attorney and his client by guarantying the inviolability of their confidential communications. The 'work product of the attorney', on the other hand, is accorded protection for the purpose of preserving our adversary system of litigation by assuring an attorney that his private files shall, except in unusual circumstances, remain free from the encroachments of opposing counsel."

In Hickman v. Taylor, supra, the Supreme Court held that notwithstanding the non-privileged nature of the material sought, discovery was improper. At page 510, 67 S.Ct. at page 393 the Court stated:

"Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties."

This did not mean, the court said, that all written materials obtained or prepared by a lawyer with an eye toward litigation are necessarily free from discovery in all cases. At page 511, 67 S. Ct. at page 394, the Court said:

"Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they may be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty."

The court placed the burden squarely upon the party seeking discovery of a

lawyer's work product to establish adequate justification for production (p. 512, 67 S.Ct. 385).

■ Thus, the *Hickman Case* established what has been termed a "qualified immunity"; see 2A Barron and Holtzoff, Federal Practice and Procedure, § 652, and documents embodying the mental impressions of counsel, his legal conclusions, factual analysis and strategy, are normally inviolate and discoverable only upon an exceptional showing of justification. Insurance Co. of North America v. Union Carbide Co., 35 F.R.D. 520 (D.C.Colo.1964).

The determination of whether there has been a sufficient showing of "exceptional circumstances" under Hickman v. Taylor is largely a matter of discretion. This is consistent with the approach of the Wisconsin supreme court in State ex rel. Dudek v. Circuit Court, 34 Wis.2d 559, 150 N.W.2d 387, 409 (1967). See also 4 Moore's Federal Practice, ¶26.38 [8.–3]; Diamond v. Mohawk Rubber Co., 33 F.R.D. 264 (D. C.Colo.1963).

■ In addition, it is noteworthy that the showing required to overcome the work product immunity is greater than the usual requirement of "good cause" contained in rule 34, Federal Rules of Civil Procedure. See 2A Barron and Holtzoff, Federal Practice and Procedure, § 652.2 at page 139.

The court must determine whether there has been a showing of exceptional circumstances which justify piercing the immunity given under Hickman v. Taylor, supra, and Dudek v. Circuit Court, supra.

The defendant has asserted in its pleadings the plaintiff's "unclean hands" in the procurement of the Brainard reissue patent. The alleged inequitable conduct complained of arises from the plaintiff's employment of Mr. Beall under an exclusive consultant contract. It is alleged that Mr. Beall passed on the Brainard patent while he was employed in the United States patent office as a primary examiner; it is also charged that shortly thereafter he was hired by the plaintiff to evaluate the Brainard patent and its relationship to prior art. It is further alleged that through the activities of Mr. Beall certain rules of the patent office were violated; in particular, it is alleged that Mr. Beall exerted undue influence over Mr. Eanes, a former associate of Mr. Beall in the patent office.

The work product rule is essentially a balance between the need for discovery and one's right to retain the benefit of his own research. The policy behind the immunity is to protect from disclosure the "fruits of a lawyer's labors". United States v. Swift & Co., 24 F.R.D. 280, 284 (N.D.Ill.1959). In the case at bar, the defendants challenge the motives of and procedures used by the plaintiff in obtaining the patents in suit. This challenge involves, to a large extent, the activities of the plaintiff's attorneys, both inside and outside the corporate structure. Thus, it is the very "fruit" of the lawyers' labor that is being called into question by the defendant in this case. See Insurance Company of North America v. Union Carbide Company, 35 F.R.D. 520, 524 (D.C.Colo.1964).

In my opinion, this is not a situation where the defendant seeks work product material simply "to make sure he has overlooked nothing." Hauger v. Chicago, Rock Island & Pacific R.R. Co., 216 F.2d 501 (7th Cir. 1954). Nor is it an effort "to rifle an attorney's mind and file." Dudek, supra, p. 412. In my opinion, the defendant is justified in seeking to pursue its line of inquiry into the nature of the relationship of Mr. Beall with the plaintiff; this applies also to the documents sought which relate to the communications of Messrs. Wutschel and Hajewski.

■ I conclude that the defendant has adequately met its burden of showing exceptional circumstances to negate the plaintiff's claim of insulation under the work product rule.

The court will now consider the motion to produce those documents listed

in plaintiff's category VII (see Ex. A, attached to plaintiff's brief). They relate to communications between outside counsel other than Mr. Beall, particularly the firm of Quarles, Herriott, Clemons, Teschner & Noelke. In my opinion, the defendant has not shown sufficient justification for disclosure of such documents. That firm is trial counsel for the plaintiff; the defendant's pleadings have not implicated it in any scheme to defraud the patent office. I am not impressed with the defendant's statement, without more, that Mr. Clemons is a director and a member of the executive committee of the plaintiff corporation.

## II. THE NON-PRIVILEGED LICENSING NEGOTIATIONS

A dispute has arisen with respect to certain documents representing the plaintiff's licensing negotiations with various machine tool manufacturers relative to the Brainard and Morgan patents. The plaintiff concedes that such documents are not privileged, but it maintains that the communications are "extremely sensitive" and that disclosure would be prejudicial to such prospective licensees since many of the companies are in direct competition with the defendant. The plaintiff requests a protective order limiting inspection and knowledge of such documents to defendant's trial counsel.

The issue centers around five prospective licensees. Documents concerning four of the five licensees have already been produced voluntarily by the plaintiff, subject to the limitation mentioned above. These four prospective licensees have terminated negotiations with the plaintiff, without accepting a license, pending the outcome of the instant litigation. The fifth company is still in the active negotiation stage, and with respect to this company, the plaintiff submits that neither the documents nor even the name of the company should be produced. The defendant presses for the right to unlimited discovery of all license negotiation communications.

The principal thrust of the defendant's argument is that it is entitled to ascertain whether or not the plaintiff has been consistent with respect to its charges of infringement and its position with respect to the scope and validity of the patents in suit. The defendant also contends that negotiations between the plaintiff and others are germane to the misuse and anti-trust issues.

 The defendant's position has merit. In my opinion, the documents relative to negotiations with the five prospective licensees who are awaiting the outcome of this litigation should be produced, without the limitations proposed by the plaintiff.

## IV. CONCLUSION

Defendant's counsel is requested to present an appropriate order for signature. Such proposed order should not be submitted to the court until three days after it has been first exhibited to plaintiff's counsel.