The DUPLAN CORPORATION,
Plaintiff,

v.

DEERING MILLIKEN, INC., et al.,
Defendants.

DEERING MILLIKEN RESEARCH COR-
PORATION, Plaintiff,

v.

The DUPLAN CORPORATION and Bur-
lington Industries, Inc., Defend-
ants.

The DUPLAN CORPORATION et al.,
Plaintiffs on the Counterclaim,

v.

DEERING MILLIKEN RESEARCH COR-
PORATION, Defendant on the
Counterclaim,
and
Deering Milliken, Inc., et al., Additional
Defendants on Counterclaim.

Civ. A. Nos. 71–306, 70–968 and 69–1096.*

United States District Court,
D. South Carolina,
Spartanburg Division.

May 9, 1973.

Stay Denied May 17, 1973.

See also, D.C., 353 F.Supp. 826.

* Also Civ. A. Nos. 68–705; 69–777; 70–14;
70–189; 70–250; 70–295; 70–358; 70–385;
70–386; 70–391; 70–493; 70–622; 70–628;
70–677; 70–683; 71–87; 71–88; 71–89;
71–90; 71–91; 71–92; 71–93; 71–94; 71–
95; 71–96; 71–97; 71–98; 71–99; 71–100;
71–101; 71–102; 71–115; 7–126; 71–127;
and 71–283.

John W. Malley, William K. West, Jr., and W. Warren Taltavull, of Cushman, Darby & Cushman, Washington, D. C., and O. G. Calhoun, Jr., of Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., for Burlington Industries, Inc., Madison Throwing Co., Inc., Leon-Ferenbach, Inc. and National Spinning Co., Inc.

Paul Bell, and Charles B. Park, III, of Parrott, Bell, Seltzer, Park & Gibson, Charlotte, N. C., and Fletcher C. Mann, of Leatherwood, Walker, Todd & Mann, Greenville, S. C., for The Duplan Corp., The Schwarzenbach-Huber Co., Jonathan Logan, Inc., Frank Ix & Sons Va., Corp., Lawrence Texturing Corp. and Burkyarns, Inc. Also Allan Trumbull, of Willkie, Farr & Gallagher, New York City, appeared.

David Rabin, and McNeill Smith, and Michael R. Abel, of Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for Texfi Industries, Inc., Blanchard Yarn Co., Reliable Silk Dyeing Co., Dixie Yarns, Inc., Tex-Elastic Corp., Hemmerich Industries, Spring-Tex, Inc., Olympia Mills, Textured Fibres, Virginia Mills, Inc., and Throwing Corp. of America.

Thomas A. Evins, of Butler, Means, Evins, & Browne, Spartanburg, S. C., and Jay Greenfield, of Paul, Weiss, Rifkind, Wharton & Garrison, New York

City, for Deering Milliken, Inc., and Deering Milliken Research Corp.

Rufus M. Ward, of Ward, Howell & Barnes, Spartanburg; S. C., and Granville M. Brumbaugh, of Brumbaugh, Graves, Donohue & Raymond, New York City, for Ateliers Roannais de Constructions Textiles.

IN CAMERA INSPECTION OF DOCUMENTS SUBMITTED FEBRUARY 8, 1973, BY CHAVANOZ FOR WHICH THE ATTORNEY CLIENT AND/OR ATTORNEY WORK PRODUCT PRIVILEGE IS CLAIMED

HEMPHILL, District Judge.

The court has before it for *in camera* inspection six hundred eighty-three (683) documents (as well as one hundred sixteen (116) photographs and one hundred seventy-six (176) pages of reports of experiments, all claimed by producers as prepared in anticipation of litigation) production of which is sought by the Duplan Corporation and Burlington Industries (hereinafter referred to as the Throwsters) and withheld by Moulinage et Retorderie de Chavanoz (hereinafter referred to as Chavanoz) on claims of attorney-client privilege and/or work product privilege. The great majority of these documents have only one of these privileges claimed, although some have both claims made for them.

An initial *in camera* inspection of these documents, primarily for the purpose of more complete identification, was made by the court on March 5th, 6th and April 2, 1973. At that time counsel for Chavanoz identified the specific privilege or privileges claimed for each document and the court assigned an identifying number to the document or documents (some documents consist of two or more separate pieces of correspondence or memoranda), and with several exceptions noted in the transcript, either ordered the document produced at that time or tentatively accepted the classification assigned by counsel for Chavanoz. As approximately two thirds of the documents examined are in French, an interpreter acceptable to all parties was present to assist the court and acted in this matter as an officer of the court. A deputy clerk of the court and the official court reporter were present, and all colloquy between counsel, court, interpreter (translator), et cetera, were recorded, preserved, and later transcribed.

Subsequent to the transcription of the initial inspection, copies of which were made available to all parties, the Throwsters submitted to the court a memorandum in which, based on the information contained in the transcript and the list of privileged documents previously submitted by Chavanoz, they divided the documents into twelve categories [1] predicated on the grounds upon which they contested the court's tentative assignment of privilege. This memorandum was followed by a memorandum from Chavanoz in which the contentions of the Throwsters were either rebutted or acceded [2] to the Throwsters' contentions, the latter being signified by their agreement to produce the documents in question. The documents which Chavanoz has agreed to produce are:

| Document # | Category | Document # | Category |
|---|---|---|---|
| 52 | II | 216 | III & IV |
| 68 | II | 410 | II |
| 127 | III & IV | 515 | VI |
| 146 | III | 524 | I |
| 148 | III | 525 | I |

Due to the volume of material before the court the claimed privileges of work product and attorney-client will be considered separately in the interest of expediting the production of those documents which the court has determined not to be privileged. Part I of this or-

---

1. See Appendix A.

2. Chavanoz relented from its previous claim of privilege as to many documents.

der will therefore be limited to the claimed work product privilege, and Part II, to be filed separately at a later date, will consider the claimed attorney-client privilege.

## PART I

### The Work-Product Privilege

 Before entering into a detailed examination of the work-product privilege as it relates to this case, a few preliminary observations, are in order. Initially, it is important to bear in mind that the sole purpose of the work product privilege is, as was said in Thompson v. Hoitsma, 19 F.R.D. 112 (D.C.N.J. 1956), to protect the legal craftsman in the product of his labors and this privilege continues until the confidential nature of such work is destroyed by public use, as in court, or until the ends of justice otherwise require its termination. Id. at 114, 115. See also Transmirra Products Corp. v. Monsanto Chemical Co., 26 F.R.D. 572 at 578 (S.D.N.Y. 1960). Furthermore, unlike the attorney-client privilege which is, short of a waiver by the party asserting it, absolute, the work product privilege is a qualified privilege which may be pierced by a showing of good cause by the party seeking discovery. While the attorney-client privilege is clearly the privilege of the client, the work product privilege is that of the attorney, for as was so well stated in Scourtes v. Fred W. Albrecht Grocery Co., 15 F.R.D. 55 (D.C.N.D. Ohio E.D.1953):

> * * * The purpose of the attorney-client privilege is to encourage full disclosure of information between an attorney and his client by guaranteeing the inviolability of their confidential communications. The 'work product of the attorney', on the other hand, is accorded protection for the purpose of preserving our adversary system of litigation by assuring an attorney that his private files shall, except in unusual circumstances, remain free from the encroachments of opposing counsel. Id. at 58.

Consequently, as was noted in *Transmirra,* supra, the protection afforded an attorney's work product is not affected by a waiver of the attorney-client privilege.

 It. is important to note, also, that while the attorney-client privilege goes to all communications between an attorney and his client where the attorney is acting in his capacity as a legal advisor, the work product privilege is limited to situations in which the attorney's efforts were either in preparation for trial or in anticipation of litigation.[3] Furthermore, the probability that some particular litigation will occur must be substantial before a document may be deemed to be "in anticipation of litigation" Thomas Organ Co. v. Jadranska Slobodna Plovidba, 54 F.R.D. 367 (N.D. Ill.1972). Therefore the mere fact that a particular action or a particular patent has a likelihood of bringing about litigation at some time in the future is not a sufficient showing. The probability must be substantial and the commencement of litigation must be imminent. Phrased another way, some particular litigation must be contemplated at the time the document is prepared. In Hogan v. Zletz, 43 F.R.D. 308 (N.D.Okla. 1967), a proceeding ancillary to a patent infringement action, it was held with respect to some fifty-five (55) documents prepared by personnel in a corporate patent department and for which the work product privilege had been claimed, that as there was no indication that any of the documents "were prepared or obtained in preparation for possible litigation *after a claim was recognized as having arisen*", Id. at 317 (emphasis added.), they would not be work product, and should therefore be produced. On appeal, Judge Breitenstein in Natta v.

---

3. Federal Rules of Civil Procedure, Rule 26(b)(3).

Hogan, 392 F.2d 686 (10 Cir. 1968), upheld the lower court's order as to these documents with a single exception. In reaching its decision the court observed that with the exception of the single document which it held need not be produced, none of the documents were identified as having been prepared by any particular attorney. While on a first reading Judge Breitenstein's statement that "The work product claim cannot be brushed aside on the theory that the documents were not prepared for use in litigation" *Id.* at 693, could give the appearance of having reversed the trial court's holding on this point, on close reading it is clear that this is not the import of the above quoted statement. In pertinent part the opinion provides:

> . . . The trial court held that the documents were not within the work product doctrine because they were not prepared "for possible litigation after a claim was recognized as having arisen."

> To support the reasoning of the trial court, Montecatini relies on Zenith Radio Corp. v. Radio Corp. of America, D.Del., 121 F.Supp. 792, 795, where it is said: "Seldom, if ever, are patent department employees engaged in actual preparation for a trial of the required type." *This may be true but here some of the documents specifically refer to the interference proceedings. Nothing in Hickman v. Taylor suggests that the work product rule is limited to preparation for proceedings in a court of record.* The rationale for the work product doctrine is the prevention of unnecessary interference with the work of an attorney. An attorney's work in the patent law field should be as much his own as it is in other areas of the law. The work product claim cannot be brushed aside on the theory that the documents were not prepared for use in litigation. *Id.* at 693.

Thus it is clear that the true import of this holding is that the work product privilege may be claimed for material prepared for administrative proceeding, such as patent interference proceedings *as well as* for proceedings before courts of record. Thus the trial courts requirement that there be some *particular litigation* contemplated was modified only to the extent that litigation was held to include patent interference proceedings. The single document which was excluded from production was excluded for the purpose of protecting the mental impressions, conclusions, opinions, or legal theories of an attorney concerning the "litigation" (patent interference action). Where however, the author of similar documents in question was not identified, the order for production by the trial court was affirmed.

██ The primary contention of the Throwsters, in the present proceedings to require production of the documents in question, is that the work product privilege affords protection to an attorney's efforts only so far as they concern the *current* litigation or proceedings. Put another way, it is their contention that the attorney's work product privilege terminates with the termination of the litigation toward which the attorney's efforts were directed.

Because of the potentially far-reaching effect of such an assertion as this, the court, aided by the very thorough briefs of counsel, has conducted an extensive examination of the precedents with respect to this question. The court is particularly mindful of the recent decision of Judge Atkins in Celanese Corp. and Fiber Industries, Inc. v. Leesona Corp., (M.D.L. Docket No. 82, No. 71–1026–CIV–CA, filed March 22, 1973), and this court's own order in Duplan Corp. v. Deering Milliken, et al (Consolidated Civil Action No. 71–306, Jan. 5, 1972), both of which held that the work-product privilege, once it attaches, remains regardless of the litigation in which discovery is sought. This court noted in *Duplan*, supra, at page 3, note 2, that to hold that the work product

privilege terminates with the termination of the litigation to which it applied may well be a Pandora's box which the court must approach with extreme caution.

The earliest case this court has found which specifically considers the question of termination of the work product privilege is Tobacco and Allied Stocks v. Transamerica Corp., 16 F.R.D. 534 (D. Del.1954) [hereinafter referred to as *Transamerica*]. The court in *Transamerica* was concerned with a claim of privilege for some twenty (20) letters contained in the files of an attorney which related to the availability of evidence obtained from outside sources for use in an earlier case, and which had been previously identified as work product for use in the prior case. Having first determined that these letters did not fall within the attorney-client privilege, the court squarely faced the question here under consideration. In concluding that the letters were no longer protected by the work product privilege the court observed:

> Moreover, the documents called for by the subpoena duces tecum are not protected from discovery by the "work-product" theory. Deponent has already testified he had never been retained as counsel to represent plaintiffs in the instant action prior to the decision of this Court in Speed v. Transamerica Corp., D.C.Del., 99 F. Supp. 808, on August 8, 1951. His correspondent, in connection with the 20 challenged writings, likewise never represented plaintiffs. It appears all of the correspondence now before the Court was a part of the files dealing with the Geller case and used in the preparation of that case for presentation to this Court. *In no sense can these letters—all written in 1943 and more than 8½ years prior to the institution of the case at bar—be a part of plaintiffs' attorneys' 'work-product' in the presentation [sic] of the instant case for presentation to this Court.*

*Defendant, here, seeks not to obtain benefit of the present plaintiffs' counsels' industry in the preparation of the case at bar for trial. On the contrary, defendant seeks to obtain discovery of facts from which to ascertain what knowledge plaintiffs had in fact and are chargeable with in the instant case.* Id. at 537 (emphasis added).

The next case to directly consider this question was Hanover Shoe, Inc. v. United Shoe Machinery Corp., 207 F.Supp. 407 (M.D.Pa.1962), [hereinafter referred to as *United Shoe*]. In United Shoe the document sought was a memorandum made in 1950 at a meeting as a part of United's defense to a Sherman Act violation alleged by the government. This case terminated in the trial court in 1953 and was affirmed by the Supreme Court in 1954. United argued that the memorandum formed a part of the attorney's work product in the prior case, and that since plaintiff's claim was founded on the adverse decision against defendant in the prior case, the memorandum was a part of the lawyer's work product in the prior action. In answering defendant's contentions the court held:

> The cases of Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 and Schwabe v. United Shoe Machinery Corp., E.D.N.Y.1960, 26 F. R.D. 228, cited by the defendant in support of its work product argument are not controlling.

> *There is nothing in the Hickman case which extends the work product principle to preclude discovery of a lawyer's memorandum, prepared during a prior case, in a subsequent action between different parties.* Id. at 410 (emphasis added).

A case heavily relied upon by Chavanoz in opposing production of prior work documents is Insurance Co. of North America v. Union Carbide Corp., 35 F. R.D. 520 (D.Colo.1964) [hereinafter referred to as *Union Carbide*]. In *Union*

*Carbide* the court was considering *in camera* the defendant's attorney-client correspondence file relating to a prior closely related case. In its opening remarks the court observed that it had previously ordered production of certain correspondence between three law firms which was related to the prior litigation. The court stated that some of this correspondence might have involved work product; but that

> Inasmuch as the interests of the two separate defendants in the Montrose County action were potentially adversary, however, probably leading their attorneys to deal at arm's length, and since the communications between the law firms were not privileged, it was concluded that the interest of the Insurance Company of North America in discovering what agreement, if any, was made between the three law firms with respect to dealing with the subrogation interest of the Insurance Company of North America in the Montrose County action outweighed the interest of Tilly & Skelton and Coit & Graham in withholding from disclosure their entire correspondence files because some evidence of their strategy might have been reflected in correspondence between them. *Id.* at 521.

While this appears to be similar to the action taken in *Hanover Shoe* and *Transamerica,* supra, in considering the attorney-client files presently before it, the court after discussing the necessity of a showing of good cause to require production of an attorney's work product in a current action stated:

> The rationale which compels that we be extremely reluctant to invade an attorney's files is scarcely less applicable to a case which has been closed than to a case which is still being contested. Adversary counsel in an active case, obviously, should not

normally be free to force his opponent to reveal his strategy; *but neither should counsel in a closely related subsequent case, albeit between different parties in part, obtain carte blanche to examine an attorney's files in the former case.* Should discovery of an attorney's work product in a former case ever be generally or indiscriminately permitted counsel would undoubtedly feel constrained to leave unwritten and unrecorded many of their impressions and plans which they should feel free to reduce to writing. *Id.* at 522 (emphasis added).

The court in *Union Carbide* took note of the *Hanover Shoe* case as being the "single reported case" [4] which could arguably be relied on for the proposition that the work product in one case is routinely discoverable in a subsequent action between different parties. It went on however to conclude that *Hanover Shoe* did not stand for that as a general principle, apparently basing this conclusion in part on the fact that a single memorandum was there sought, and further that the memorandum contained the statement of a party which that party had no other means of obtaining.

In light of the fact that the court in *Union Carbide,* in refusing to require production of the correspondence sought, concluded that all of the documents came under the attorney-client privilege, as well as the fact that its prior (apparently unreported) order had in fact required what the court later disapproved of, convinces this court that this disapproval must be looked upon as mere dictum, and that if anything, it stands for the proposition that the simple fact that prior litigation has terminated is an insufficient basis to allow *carte blanche* access to an attorney's files by opposing parties in subsequent litigation.

The second case relied upon by Chavanoz is the only case on point above the

---

4. This reference is difficult to understand as the holding in *Transamerica* was quoted in *Hanover Shoe.*

trial court level which this court has been able to find. That case is Republic Gear Co. v. Borg-Warner Corp., 381 F. 2d 551 (2 Cir. 1967) [hereinafter referred to as *Republic Gear*]. *Republic Gear* was a proceeding to compel discovery of documents, prepared for prior litigation and in possession of New York attorneys, for use in a suit pending in Illinois. The court there held that the documents sought, which were held by a non-party attorney who had represented Brazilian corporations in prior litigation, were protected from adversary disclosure in subsequent litigation both as attorney's work product and by attorney-client privilege where the corporations had not waived the latter privilege. A careful reading of this case reveals, however, that it does not in fact stand for the proposition that the work product privilege extends beyond the *termination* of the litigation for which the documents were prepared. As was observed by the court in *Republic Gear*:

> With reference to the documents shielded from discovery below as an attorney's "work product," we have found little authority as to whether the "work product" protection is restricted to materials prepared in connection with the very litigation in which the discovery is sought. *The few lower court decisions in which disclosure was compelled dealt with material prepared for use in prior proceedings which had been fully completed before discovery was requested,* see, e. g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., 207 F.Supp. 407, 410 (M.D.Pa.1962); Tobacco & Allied Stocks, Inc. v. Transamerica Corp., 16 F.R.D. 534, 537 (D.Del. 1954). *Those cases are thus clearly distinguishable from the present case,* for here the broad purpose of the rule which is designed to encourage effective legal representation by removing counsel's fear that his thoughts and information will be invaded by his adversary if he records them would be

defeated if Republic could gain access to Nattier's files by proceeding against a party Nattier did not professionally represent but nevertheless a party involved in the same transaction in which Nattier's former clients were involved. And *here, of course, Nattier's former clients remain suitable. Id.* at 557 (emphasis added).

The latest case on point, other than Judge Atkins' recent unreported decision, supra, appears to be Honeywell, Inc. v. Piper Aircraft Corp., 50 F.R.D. 117 (M.D.Pa.1970) [hereinafter referred to as *Honeywell*]. *Honeywell* was a patent infringement case in which defendants counterclaimed alleging misuse of patents and a conspiracy to monopolize the manufacture, use, and sale of the patented aircraft guidance system. Defendants sought discovery of materials prepared by counsel in connection with prior patent interference actions, a situation having a great similarity to the present case. The court there held:

> Turning first to the "work product" objection, a review of plaintiff's Exhibit A discloses that many of the documents related to interference cases are dated in the 1940's to 1950's and early 1960's. All documents listed are prior to the dates of this suit. Many of the interference actions are indicated as having been terminated by settlement or agreement. There is no indication that any are still pending. Defendants were not parties to the interference actions. *An attorneys' memorandum in a prior case involving different parties does not have the protection of the "work product" principle.* 4 Moore, Federal Practice para. 26.23 [8.–3] at p. 1436 (2d ed.). Hanover Shoe, Inc. v. United Shoe Machinery Corp., supra; Tobacco & Allied Stocks, Inc. v. Transamerica Corp., D.Del.1954, 16 F.R.D. 534; Cf. Republic Gear Co. v. Borg-Warner Corp., 2 Cir. 1967, 381 F.2d 551. *There is no indication that the documents were prepared "with an eye to-*

*ward litigation" involved in this suit.* The work product objection cannot prevail. *Id.* at 119 (emphasis added).

In addition to the cases directly on point there are several cases which are pertinent to the question before the court. In United States v. Kelsey-Hayes Wheel Co., 15 F.R.D. 461 (E.D.Mich. 1954), a civil anti-trust action, the defendants *sought to raise the attorneys' work-product privilege as to certain documents* removed from corporate files by the government prior to commencement of the litigation. As the court had already determined that any privilege claimed had been lost by defendant's own actions in allowing the government to remove the records in question from its general files, where they had been placed with no special protection for their claimed confidential status, its remarks concerning attorney work product are *dicta,* but are still relevant to the present question. Having earlier observed that an attorney's work files, assembled in preparation for a lawsuit, were protected against discovery, the court observed:

> These documents appear to be memoranda of law or reports of conferences. Even if prepared in anticipation of litigation, *the documents must presently be part of the work files of an attorney before they are entitled to the protection of the work-product rule.* These particular documents were apparently circulated among the interested officials of Budd and *it does not appear that they resided in the patent counsel's work files when pulled by the Government's representatives.* They do not, therefore, qualify for the special protection afforded by that rule. *Id.* at 465 (emphasis added).

As was previously observed, the court in Thompson v. Hoitsma, 19 F.R.D. 112 (D.N.J.1956), stated that the work product privilege continues *"till the confidential nature of such work product is destroyed by public use, as in court, or*

*till the ends of justice otherwise require its termination." Id.* at 115 (emphasis added). This holding was also adopted by the court in Transmirra Products Corp. v. Monsanto Chemical Co., 26 F. R.D. 572 (S.D.N.Y.1960), citing *Thompson, supra.*

In light of the above noted cases, it appears that while there is indeed a split in authority as to whether the work product privilege terminates with the termination of the litigation, the split is not as severe as Judge Atkins' order of March 22, 1973, supra, would indicate. It is the determination of this court that the clear weight of authority must be viewed as indicating that (1) when a case in litigation is finally terminated; (2) by either a decision of the court or by settlement among the parties; (3) the work product privilege is also terminated; and (4) the work product of attorneys in the prior litigation is therefore subject to discovery in subsequent litigation.

 The material of which the Throwsters here seek production is allegedly sought for the purpose of determining the prior knowledge of Chavanoz as to the validity or the invalidity of certain patents which Chavanoz asserts are being infringed by the Throwsters. With the exception of one group of documents which will be discussed separately, the documents before the court all relate to and were prepared for prior litigation that has been terminated. It is the decision of this court that the weight of authority noted above clearly indicates, and the demands of justice dictate, that the documents here considered be ordered produced if a *suffocation of truth* is to be avoided. Those documents in Categories II; III; VII; VIII; IX; X and XI which were prepared for prior litigation that has been terminated, and for which an attorney-client privilege is not also claimed, as hereafter set forth in Appendix B, will be delivered by the court from its *in camera* file to the Clerk for immediate distribu-

tion to counsel for the Throwsters. Additionally, the one hundred sixteen (116) photographs and the one hundred seventy-six (176) pages of reports shall be produced by Chavanoz for inspection and copying by the Throwsters not later than May 10, 1973, at the Court House in Rock Hill, S. C. As these reports and photographs have been separated by counsel for Chavanoz from the documents with which they may have been associated, prior to production counsel for Chavanoz shall reassociate or otherwise identify the photographs and reports to the files and/or documents of which they are a part.

For the present the court withholds judgment on those documents for which the attorney-client privilege, either alone or in conjunction with the work product privilege, has been asserted. The production of these documents will be further considered by the court and a determination made as Part II of this Order.

The court has been advised by Chavanoz that certain documents within Category IX, commencing with No. 624 and including all listed thereafter, were prepared for patent interferences proceedings *presently in progress* in Great Britain. As such these documents are not subject to production under the rationale of prior *terminated* litigation. The court therefore reserves judgment as to these documents for the present and they will not be produced at this time. A decision as to these documents will be made at the time the court considers the claims of attorney client privilege.

A third group of documents which will not be produced at the present time consists of those documents designated by the Throwsters as Category XII, and categorized as "Documents which the Throwsters are not contesting on the basis of the information contained in the transcripts." As it is not clear to the court whether the placing of these several hundred documents (many of which are in French) in Category XII constituted an abandonment of Throwsters' allegation that the work product privilege did not attach to these documents as they concerned prior terminated litigation, the court withholds judgment as to these documents at the present time. The Throwsters shall therefore have until May 15, 1973, to submit to the court a list of those documents in Category XII which they maintain should be produced under this Order. Should no such list be submitted to the court in Columbia, South Carolina, by 5:00 P.M., Tuesday, May 15, 1973, the court shall consider Throwsters' request for production of these documents to have been permanently abandoned.

And it is so ordered.

## APPENDIX A

### IN CAMERA INSPECTION OF DOCUMENTS—March, 1973

CATEGORIES ASSIGNED BY THROWSTERS TO DOCUMENTS ALLEGED NOT TO BE PRIVILEGED

I. The claimed attorney-client privilege was waived by the client.

II. Miscellaneous.

III. The claimed work product document was filed or published with a court.

IV. The claimed attorney-client privilege fails because of a disclosure to a third party.

V. The claimed attorney-client privilege and/or work product rule fails because the attorney was acting as a conduit.

VI. The claimed attorney-client privilege fails for want of confidentiality.

VII. The claimed attorney-client privilege and/or work product rule fails because of abuse of the privilege or the rule.

VIII. The claimed work product document post-dates the termination of the prior litigation.

APPENDIX A—Cont'd

IX. The claimed work product document was prepared for an opposition or other patent office proceeding which was not handled by a member of the bar.

X. The claimed work product document antedates the termination of the prior litigation.

XI. The claimed attorney-client privilege and/or work product rule fails because of an insufficient showing.

XII. Documents which the Throwsters are not contesting on the basis of the information contained in the transcripts.

APPENDIX B

DOCUMENTS TO BE PRODUCED PURSUANT TO THIS ORDER

| DOCUMENT NUMBER | CATEGORIES |
|---|---|
| 3 | X |
| 5 | XI |
| 6 | X |
| 25 | X |
| 26 | X |
| 27 | II |
| 44 | X |
| 45 | X |
| 46 | X |
| 52 | XI |
| 58 | X |
| 67 | X |
| 75 | X |
| 77 | XI |
| 85 | X |
| 87 | X |
| 88 | X |
| 89 | X |
| 90 | X |
| 93 | XI |
| 94 | XI |
| 95 | XI * |
| 96 | XI |
| 100 | X |
| 101 | X |
| 102 | X |

| DOCUMENT NUMBER | CATEGORIES |
|---|---|
| 108 | X |
| 113 | XI |
| 116 | VIII |
| 121 | VIII |
| 209 | X |
| 211 | III |
| 212 | III |
| 213 * | XI |
| 217 | X |
| 220 | XI |
| 223 | III; IV; X |
| 225 | X |
| 226 | X |
| 227 | X |
| 229 | X |
| 230 | X |
| 231 | X |
| 232 | X |
| 233 | X |
| 235 | X |
| 236 | X |
| 237 | X |
| 239 | X |
| 242 | X |
| 243 | X |
| 244 | X |
| 246 | X |
| 247 | X |
| 248 | X |
| 249 | XII |
| 250 | X |
| 252 | X |
| 254 | X |
| 255 | X |
| 256 | X |
| 257 | X |
| 258 | X |
| 259 | X |
| 260 | X |
| 261 | X |
| 262 | X |
| 271 | X |
| 272 | X |
| 273 | X |
| 278 | X |
| 279 | X |
| 285 | X |
| 289 | XI |

* This document was not presented to the court for inspection.

| DOCUMENT NUMBER | CATEGORIES |
|---|---|
| 290 | X |
| 306 | X |
| 309 | XI |
| 312 | X |
| 313 | X |
| 314 | X |
| 315 | X |
| 316 | X |
| 319 | X |
| 320 | X |
| 321 | II; VIII; XI |
| 322 | II; VIII; XI |
| 325 | X; XI |
| 326 | X |
| 329 | X |
| 333 | X |
| 335 | X |
| 336 | X |
| 337 | X |
| 340 | X |
| 341 | X |
| 342 | X |
| 343 | X |
| 344 | X |
| 345 | X |
| 346 | X; XI |
| 347 | X |
| 348 | X |
| 349 | X |
| 350 | X |
| 351 | X |
| 352 | X |
| 354 | X |
| 355 | X |
| 356 | X |
| 358 | X |
| 359 | X |
| 360 | X |
| 362 | X |
| 363 | X |
| 364 | X |
| 365 | X |
| 366 | X |
| 367 | X |
| 369 | X |
| 370 | X |
| 371 | X |
| 372 | X |

| DOCUMENT NUMBER | CATEGORIES |
|---|---|
| 373 | X |
| 374 | X |
| 375 | X |
| 376 | X |
| 377 | X |
| 378 | X |
| 380 | X |
| 381 | X |
| 387 | X |
| 389 | X |
| 397 | X |
| 399 | X; XI |
| 400 | X; XI |
| 401 | II; VII; VIII; XI |
| 403 | X |
| 404 | X |
| 405 | X |
| 406 | X |
| 411 | X |
| 413 | X |
| 414 | X |
| 415 | III; X |
| 416 | III; X |
| 417 | III; X |
| 418 | III; X |
| 423 | VII |
| 443 | VII |
| 457 | VII |
| 459 | VII |
| 461 | VII |
| 465 | VI; X |
| 482 | X |
| 501 | X |
| 526 | XI |
| 527 | X; XI |
| 528 | X |
| 532 | X |
| 533 | III |
| 534 | III |
| 535 | III |
| 537 | X |
| 538 | X |
| 539 | X |
| 540 | X |
| 541 | X |
| 542 | X |
| 543 | X |
| 544 | X |

| DOCUMENT NUMBER | CATEGORIES |
|---|---|
| 545 | X |
| 546 | X |
| 547 | X |
| 549 | II; X |
| 550 | X |
| 551 | X; XI |
| 552 | X; XI |
| 553 | X; XI |
| 554 | X |
| 574 | X |
| 575 | X |
| 576 | IX; X |
| 577 | IX; X |
| 578 | IX; X |
| 579 | IX; X |
| 580 | IX; X |
| 581 | IX; X |
| 591 | X |
| 592 | X |
| 594 | X |
| 597 | XI |
| 599 | X |
| 622 | X |
| 623 | X |

Note: During the initial *in camera* inspection conducted March 5, 6, and 12, 1973, only the work product privilege was claimed but subsequently an attorney-client privilege was claimed as well for the below listed documents. Consequently these documents will not be produced at this time, and will be considered further in Part II to this order.

| DOCUMENT NO. | CATEGORY |
|---|---|
| 467 | VI; X |
| 470 | X |
| 536 | X |
| 593 | X |

Document No. 215 was not placed in any category by Throwsters. As only the work product privilege is claimed for this document it will be produced.

ORDER DENYING MOTION OF CHAVANOZ FOR A STAY IN THE PRODUCTION OF DOCUMENTS ORDERED BY THE COURT'S ORDER OF MAY 9, 1973, AND PROTECTIVE ORDER RELATING THERETO.

## ORDER

Counsel for Chavanoz, one of the defendants, (or plaintiffs) in this action, by motion filed May 17, 1973, but noted by telephone May 14, 1973, seek this court's order staying the production of documents previously ordered by this court's Order of May 9, 1973. Movant states that it, along with its co-defendants (or co-plaintiffs as the case may be) wish to explore the application of Rule 26(b)(3) to documents prepared or obtained in connection with terminated litigation, and seek a ruling from the United States Court of Appeals for the Fourth United States Judicial Circuit on the issue of the application of the rule to work product documents ordered produced under the May 9 order. After the order of May 9 was published, counsel for Chavanoz asked that the effective date of the production be suspended until May 14, 1973, in order that they might review the language of the order and make a determination as to what procedure they would employ in view of the rulings published. Subsequently, on May 14, 1973, at the instigation of Stephen Finell, Esquire, counsel for Chavanoz, a conference call was arranged in which the parties were Stephen Finell, Esquire, Mr. Fletcher C. Mann, Esquire, O. G. Calhoun, Esquire, Tom Legare, Esquire (Law Clerk for the Court), and the Court. At the time, the Court advised counsel that rather than attempt to attend to business by telephone the motion should be reduced to writing, and arrangement was made for the court to return to Rock Hill on May 17 for a hearing set at 10:00 A.M. o'clock in the courtroom.

The colloquies pursued in the hearing were reduced to Stenotape by the offi-

cial court stenographer, for further review of such higher authority as might wish to review the arguments presented, and will be transcribed today.[1] Because the application over the telephone came at a time when the court had made arrangements to attend a professional meeting (A. L. I.) in a distant city, and had released certain members of the staff for vacation, the court was unable, within the time spectrum presently before us, to immediately reduce this to a formal written order. This order was therefore dictated from the bench in open court, transcribed, edited and now is published in written form.

Rule 8 of the Federal Rules of Appellate Procedure provides in subsection (a) in part: "Application for a stay of the judgment or an order of the district court pending appeal, or for approval of a supersedeas bond, or for an order suspending, or modifying, restoring or granting an injunction during the pendency of an appeal, must ordinarily be made first in the District Court. A motion for such relief may be made to the Court of Appeals or to a judge thereof, but the motion shall show that the application to the district court for the relief sought is not practical, or that the District Court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the District Court for its action."

■ Chavanoz very properly presented the issue to this court in the first instance. Other parts of the motion, treated here only for the purpose of placing it on record involved documents 229 through 320, as numbered and identified in the order of May 9, 1973; by oral order issued from the bench this day determination of the issues presented as to those documents has been delayed until counsel could offer written support of their respective positions. Likewise, Chavanoz moves to amend the order of May 9, 1973 by deleting document numbered as 423 from the Appendix B of the May 9 order for the reasons stated in the motion. As to that document, counsel have agreed that production should be withheld pending written brief or advices from respective counsel, on the issues thereabout.

This court does not have the authority to preempt, excite, participate, or in any way schedule any appellate review, whether by a single judge of the higher court (Fourth Circuit), or by a panel thereof, or by the full Court. This court takes judicial notice of the fact that the United States Circuit Court of Appeals for the Fourth United States Circuit is presently scheduled for a regular session of that court in June 1973 commencing on June 4. It is anticipated that thereafter the court will engage in its summer recess. Whether or not that Court would be able to afford a review of the issue presented by the motion at an August or September session is not for this Court to either predict or anticipate. Nor does this court have any knowledge as to the workload of that high tribunal. The reason for containing this in the order is because this court feels it must take cognizance of the prospect of delay in this case if the time factor is of the importance it previously has enjoyed in the colloquy between the court and counsel.

■ Unfortunately, this is not a final decision as to any claim or major issue in this case which has so far been advanced, which would bring it directly under the provisions of 28 U.S.C. § 1291. The provisions of 28 U.S.C. § 1292(a)(1) provides that

"The court of appeals shall have jurisdiction of appeals from: the interlocutory orders of the district courts of the United States, the United States District Court for the District of the

[1]. The court stenographer was directed to give priority to the colloquies and order of the hearing.

Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

Mindful of the various decisions on piecemeal appeals, which may or may not have provoked the enactment of 28 U.S.C. § 1292, this court finds itself in the dilemma of being asked to stay its own ruling, which does not amount to enjoining its own ruling, but to a postponing of the effect of the same. If this Court's decision were final, or this Court had the right or authority to say whether or not an appeal from this order would be honored or heard by the Circuit Court, the situation presently presented would not be as difficult. Under the present posture of the case if this court denies a stay then there is no reason counsel cannot repair to a judge of the Fourth Circuit, or a panel of that high authority, or appear as that court might otherwise direct for such considerations, expedition or acceleration as that court might feel justified.

The record here has been transcribed, the documents are in the hands of the clerk and available, and this court has previously issued its opinion that the documents should be produced.

We face practical difficulties arising from the fact that previously this court had scheduled, with the consent of all parties, depositions to be conducted by the opponents of the motion commencing on or about July 9, 1973 and running thereafter two or three weeks as necessity might dictate. Tentatively, a trial date has been set for the first Monday in October (with the permission of the Chief Judge of the District of South Carolina), and scheduling plans have been issued to that effect. This is not controlling, but the fact remains that if the documents are produced as the order provided, counsel plan to conduct examinations during the depositions, on the basis of those documents produced in July as contemplated. It is easy to reason that if a stay is issued it will have the impact of denying access to those documents during those examinations, and if it be determined by higher authority that the production ruling of May 9 was correct, then the problem of (1) getting the witness back to this country for further deposition, (2) preserving the testimony in the event of some tragic happening to the witness, and (3), repeating much of the processing or examination which has previously been conducted, is obvious. On the other hand, if the United States Fourth Circuit Court of Appeals should determine that the order was incorrect, then the dilemma arises from the fact that the documents would have been produced and counsel would have seen the documents.

This court for the reasons stated herein, and for the reasons evident from the colloquy with counsel, refuses the stay at this level. If the documents are produced as directed by the order of May 9, and higher authority does not issue a stay, unless and until this or the higher court directs otherwise, all documents produced are subject to the following *protective order:*

(a) If the documents are produced, they shall be produced to a designated counsel of the opponents who shall be responsible to make those documents available only to such associate counsel as may need the documents for preparation or for deposition, and the court designates Fletcher C. Mann, Esquire as counsel for that purpose;

(b) If in his opinion, Mr. Mann thinks it necessary to duplicate any document in order to make the same readily accessible to any associate counsel, the document shall be numbered as Duplicate No. 1 or 2 as the case may be,

and upon termination of the examination thereof, returned with the original document furnished to Mr. Mann, to the Clerk of this Court in order that the discovery processes may not be considered controlling as to the relevance of the documents or the *relevance* of the testimony incident to the documents upon the trial of the cause;

(c) Under no circumstances, and upon pain of contempt, shall any counsel to whom any document is produced allow any other person, firm, or corporation to review any document covered by this order except within the confines of this protective order;

(d) In the event the documents are used for examination of any witness, that examination shall be conducted, as to the contents of those documents, at the conclusion of the other examinations of the witness in question, and shall be in private and subject to such exclusions as may be necessary and as may be presented by counsel to the court when those examinations are imminent;

(e) Nothing herein contained shall be determinative of the relevance of any document so produced, and the issue of relevance may be raised at any appropriate time by any of the counsel involved;

(f) In the event documents are used under an excluded deposition, those portions of the deposition shall be sealed and given to the Clerk of the Court by the court stenographer then engaged, and the usual practice of circulation of transcripts of the depositions shall not be employed in those instances.

This court recognizes the right of Chavanoz to apply to higher authority, and in order that time may be given not only for the transcription of this record (which the court stenographer has been ordered to produce today in priority of all other matters in his hands) the production order of May 9 is delayed in impact until May 22, 1973 at 4:30 p. m.

This court has considered certification under 28 U.S.C. § 1292(b) which provides:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order."

It is the considered judgment of the court that such section has applicability and that there is a controlling question of law. Under the procedure allowed under Rule 8, this court finds it unnecessary to further rule herein.

And it is so ordered.