**ELLIS–FOSTER COMPANY and Montclair Research Corporation, Plaintiffs,**

v.

**UNION CARBIDE AND CARBON CORPORATION, Defendant.**

Civ. A. No. 217–57.

United States District Court
D. New Jersey.
March 20, 1958.

Steelman, Lafferty & Rowe, William Rowe, Newark, N. J., William D. Bur-

rows, New York City, of counsel, for plaintiffs.

Pitney, Hardin & Ward, William P. Reiss, Newark, N. J., James A. Fowler, Jr., New York City, of counsel, for defendant.

MEANEY, District Judge.

In the course of discovery proceedings in the above-entitled action, defendant sought production for examination of certain records, notebooks and correspondence of plaintiffs under Rule 34 Fed. Rules Civ.Proc. 28 U.S.C.A. As to some of the correspondence between Mr. Sol Shappirio, a patent attorney, and certain others, plaintiffs contending that they are communications between attorney and client set up the claim of privilege. The contested matter has been submitted to the court and has been analyzed, piece by piece, some concerning Application Serial No. 679,856 and some relating to Application Serial No. 737,704, the latter of which has been abandoned by the plaintiffs. Though Application Serial No. 737,704 has been abandoned, nevertheless defendant insists that correspondence anent this application is germane to the issue in the instant case on the question of estoppel or unpatentability. In consequence correspondence relating to both applications has been presented to the court and by it inspected. By and large the exchange of letters is concerned generally with the breadth of the claims to be made under the patent application in dispute, the changes necessary to make the claims "acceptable" to the Examiner, and the advisability of pursuing appeal on the Examiner's decisions.

### Law

█ Since the adoption of the Federal Rules of Civil Procedure a much more comprehensive concept of the type and character of documents subject to discovery proceedings and to admission into evidence obtains than originally was accepted. Many confidential relationships upon which the claim of privilege might be based have been reappraised by the courts in order to further the desirable end of getting all significant evidence in the open in trials.

█ In patent cases the most common claims of privilege have been based on the attorney-client relationship and the existence of secret processes. The former has been asserted in the instant case. In the case of Comercio E Industria Continental, S. A. v. Dresser Industries, D. C., 19 F.R.D. 513, 514, Judge Kaufman of the Southern District of New York outlined the elements of that privilege in a citation from Wigmore on Evidence, 8 Wigmore, Evidence, § 2292.

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

Judge Wyzanski of the District Court for the District of Massachusetts, in an anti-trust action, set forth broad rules governing the question of privilege in United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 358.

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." United States v. United Shoe Machinery Corporation, supra.

The learned judge went on to apply this formula to the documents in question before him and stated certain qualifications of the rule of privilege.

"The modern lawyer almost invariably advises his client upon not only what is permissible but also what is desirable. And it is in the public interest that the lawyer should regard himself as more than predicter of legal consequences. His duty to society as well as to his client involves many relevant social, economic, political and philosophical considerations. And the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice. It follows that in so far as these letters to or from independent lawyers were prepared to solicit or give an opinion on law or legal services, such parts of them are privileged as contain, or have opinions based on, information furnished by an officer or employee of the defendant in confidence and without the presence of third persons."

Using this opinion of Judge Wyzanski as a basis, Judge Leahy of the District Court for the District of Delaware, the forum where a great many patent suits originate, formulated a standard to be applied to questions involving the status and prerogatives of attorneys engaged in patent proceedings and litigation. Recognizing the peculiar problems begotten by the fact that non-lawyers may engage in practice before the patent bar, he outlined a general rule to be applied to specific cases where the determination must be made as to whether or not particular communications between attorneys and clients were encompassed in the field of privilege. Because of the technical nature of the work connected with patents in all respects, a skill, not possessed by all attorneys, is necessary. Hence the inclusion of non-attorney experts who are authorized to practice before the patent bar.

In Zenith Radio Corp. v. Radio Corp. of America, D.C., 121 F.Supp. 792, 794, Judge Leahy at expressive length gave his opinion as to the merit of the asserted claim of privilege, taking the term "acting as a lawyer" as the decisive element in so far as the field of patent law was involved. He set forth the requirements which must be met in order to be within the ambit of the term "acting as a lawyer." Judge Kaufman, in Georgia-Pacific Plywood Co. v. United States Plywood Corp., D.C., 18 F.R.D. 463, 464, hit the high spots of Judge Leahy's decision in summary fashion when he opined that "Communications dealing exclusively with the solicitation or giving of business advice, or with the technical engineering aspects of patent procurement or with any other matters which may as easily be handled by laymen are not privileged." There may be some quibble about the use of the words "as easily" in this quotation; probably "as satisfactorily and as aptly" might be suggested as a substitute phrase.

### Discussion

The letters submitted to the court would seem to fall into two categories, (1) those passing between the outside patent attorney and the inventor-corporation, (2) letters from various officers of the firm to Shappirio. In my judgment all of the communications have legal significance. They vary in subject from suggested possible causes of action, and courses of procedure under patent law, to reasons for the resignation of the writer of the letter as attorney of record. All of the letters would seem to have been written as matters of strict confidence involving legal questions concerning technical matters. While it is true that complete revelation of relevant facts should be encouraged for trial purposes, nevertheless an attorney's dealings with his client, if both are sincere, and if the dealings involve other than mere technical matters, should be immune to discovery proceedings. There must be freedom from fear of revealment of matters disclosed to an attorney because of the peculiarly intimate relationship existing.

If I interpret them as intended, I am not completely in accord with Judge Leahy's conclusions with reference to the work of those technicians who are both lawyers and scientific specialists. Certainly a person not an attorney could perform many of the functions referred to by Shappirio in his letters. Non-attorney practitioners in the patent office might well have performed some of these tasks for a client. But Shappirio was engaged by Montclair Research Corporation as an attorney peculiarly equipped with the multiform talents so desirable in this field. The correspondence definitely indicates that through the course of his activities Shappirio was acting as an attorney, and these activities included the exchange of correspondence, disclosure of which is now sought. He was prepared to resort to legal action to correct what he considered "clear error" in the Examiner's reasoning (letters in re abandoned Application 737,704). He further asked to be relieved as attorney because of his disagreement with the way the plaintiffs' remedies were being pursued. The mere fact that a non-attorney practitioner might have carried on for Shappirio's client does not in my opinion destroy the attorney-client relationship. Concededly in the field of patent law the lines are more difficult to define. However, the admission of others than lawyers in the field of patent practice should not be considered reason for breaking down well recognized and soundly based rules affecting the claim of privilege. It is conceivable that an unethical attorney might manufacture a specious legal aspect to a correspondence in an attempt to shield it from possible discovery proceedings, but anything more than a cursory examination would expose such fraudulent enterprise. I have in mind the modern view of rigid restriction of the use of the claim of privilege, but I think the tendency should not be carried too far.

■ I am of the opinion that in the case at bar the claim of privilege is properly adduced. The defendant will be able to present its defense and present its technical arguments without being unduly hampered by not having access to the correspondence, discovery of which it seeks.

I find myself unable to agree with the implied contention that because an attorney happens to be engaged in the field of patents, in which field non-attorneys are authorized to practice, he is *ipso facto* deprived of his status as a lawyer in every activity in which he operates so long as a patent prosecution is involved. There is enough confusion, sometimes thrice confounded, resulting from derogation from the functions of attorneys, and trespass on their proper sphere of activity. *Cuilibet in arte sua credendum est.* That may seem in wrong context but it is apposite and I know of no other magic touchstone for the resolution of the problem inherent in this discussion.

I have prepared a digest of the letters but do not wish to add to this already over-lengthy screed, and therefore have omitted an appendix with an analysis of the correspondence.

Let an order be submitted.