**JOH. A. BENCKISER G. m. b. H., CHEMISCHE FABRIK, Plaintiff,**

v.

**HYGRADE FOOD PRODUCTS CORPORATION, Defendant.**

Civ. A. No. 1164-65.

United States District Court
D. New Jersey.

March 8, 1966.

William J. Topken, Mahwah, N. J., by Eugene F. Buell, Pittsburgh, Pa., for plaintiff.

Crummy, Gibbons & O'Neill, by Mark F. Hughes, Jr., Newark, N. J., Kenyon & Kenyon, New York City, Theodore Kenyon, New York City, of counsel, Willkie, Farr, Gallagher, Walton & FitzGibbon, New York City, of counsel, for defendant.

COOLAHAN, District Judge:

I. Plaintiff brings this action for infringement of its patent on certain food

preservatives. He has refused to produce some of the documents requested in defendant's Motion under Rule 34, 28 U.S. C., F.R.Civ.P. Plaintiff contends that since the documents are communications between himself and one Michael Striker which were made in reference to application for the patent while Mr. Striker was plaintiff's patent agent, they are protected under the attorney-client privilege. Although Mr. Striker has since become a member of the New York State Bar, he was not an attorney at the time the disputed communications were made.

■ II. The sole question raised by plaintiff's objection to discovery is this: Are registered patent agents who are licensed to practice before the United States Patent Office but who are not attorneys licensed to practice before any state or federal courts, entitled to the protection of the attorney-client privilege.[1]

For the reasons considered below, this Court holds they are not.

III. Plaintiff presents the following syllogism. First, he notes the many cases which hold that communications between a patent attorney and client may be privileged even though the attorney is not licensed as a member of the bar of the State wherein he practices. e. g., Ellis-Foster Co. v. Union Carbide, 159 F.Supp. 917 (D.N.J.1958); Georgia-Pacific Plywood Co. v. United States Plywood, 18 F.R.D. 463 (S.D.N.Y.1956); International Minerals & Chemicals Corp. v. Golding-Keene, 162 F.Supp. 137 (D.C.W. D.N.Y.1958). For plaintiff, the kernel of these and similar cases is that one cannot be denied the privilege if he is a member of a foreign bar.

Plaintiff's second premise is that Congress has created, pursuant to its Constitutional power over patents, just such a foreign "independent bar" comprised of all those patent agents and attorneys who are entitled to practice before the Patent Office. (The premise appears obliquely

in plaintiff's brief but was distinctly spelled out at oral argument on the motion).

Plaintiff bases this proposition on the recent case of Sperry v. State of Florida ex rel. Florida Bar, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). The specific question in *Sperry* was one of federal pre-emption, not of privilege. The Court found Florida powerless to deny patent agents the right to practice before the Patent Office, since the denial would directly thwart the Congressional sanction of such practice. However, in demonstrating a comprehensive scheme of Federal regulation, the Court dwelt on the statutory system for agents' registration, the rules promulgated by the Patent Office to regulate their behavior, and the intricate legal problems involved in drafting patent claims. 373 U.S. 379, 83 S.Ct. 1322, *passim*. Plaintiff construes this discussion as recognition of a federal patent Bar for the Patent Office which is fully equal to the several state and federal court systems insofar as the privilege is concerned.

Hence, plaintiff concludes that the aforementioned cases dealing with attorneys licensed in one state but practicing in another must be extended by analogy to patent agents, who are also members of a "foreign bar" and who should therefore be accorded the protection of the privilege.

This juxtaposition of two wholly disparate issues is more ingenious than persuasive. The term "member of the bar", while venerable legal usage, offers no talisman for the instant problem. It has taken on several meanings in different contexts.

The term is sometimes used to describe the entire legal fraternity of those admitted to practice before any court; sometimes used only with respect to attorneys licensed to practice in a particular jurisdiction; and sometimes used, more colloquially, to refer to lawyers and laymen

---

an agent or attorney, it is actually the client alone who can claim the privilege.

alike permitted to practice before an administrative agency.[2]

Thus, even if it could be said that Congress has in some sense created a particular bar from the Patent Office, it still would not be clear whether members thereof fell within the scope of the privilege intended by the courts in *Ellis-Foster, Georgia-Pacific,* or *International Minerals,* supra.

Moreover, those cases did not find membership in the local bar to be the determining factor, but only to be one of several. They followed Judge Wyzanski's landmark opinion which offered a series of criteria for granting or denying the privilege, and included the requirement that the person to whom the communication is made " \* \* \* (a) is a member of the *bar of a court,* or his subordinate and (b) in connection with this communication is acting as a lawyer." United States v. United Shoe Machinery, 89 F. Supp. 357, 358 (D.C.Mass.1950) [Emphasis added].

According to Judge Wyzanski, whether a licensed attorney was "acting as a lawyer" depended upon whether he was working in a department such as a corporate patent office where the work was primarily non-legal. But in the case of patent agents, he simply found that: "Eight of the persons in the patent department are not members of the bar of any court. They are mere solicitors of patents who fall outside the privilege." 89 F.Supp. at 360.

Subsequent cases first assumed that the patent advisor in question was at least a licensed attorney, and thereby satisfied Judge Wyzanski's first criterion; they then focused on the second question of what constitutes "acting as a lawyer." For example, Judges Leahy and Kaufman adopted more flexible tests which looked

to the nature of the advice from which the communication arose—legal or technical and commercial—rather than to the particular department in which the advisor worked. Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D.C.Del.1954); *Georgia-Pacific,* supra. As Judge Kaufman put it in comparing house counsel with outside attorneys:

> The primary requirement is the same for both, that \* \* \* they act as lawyers. Communications dealing exclusively with \* \* \* business advice, or with the technical engineering aspects of patent procurement or with any other matters which may as easily be handled by laymen are not privileged. 18 F.R.D. at 464.

Perhaps confused by this emphasis in the cases, plaintiff stresses the degree to which patent agents prosecuting claims before the Patent Office must understand concepts of patent law and the requisites of patentability. He suggests this is indeed a lawyer's work.

So it is. But the cases on which he relies, expressly adopted *all* of the criteria in *United Shoe* including the *sine qua non* that the individual be an attorney admitted to practice before some court.

In patent law, as in other fields, the rule is simply that communication between a client and an administrative practitioner who is not an attorney are not privileged. McCormack, EVIDENCE § 92 at 185. A similar case is that of certified public accountants who are enrolled under Treasury Regulations with the same rights as attorneys to practice before the Internal Revenue Service, but who are nonetheless denied the privilege. Falsone v. United States, 205 F.2d 734 (5th Cir.1953).

---

2. E.G. Compare Judge Meaney's reference to agents as those "non-attorney experts who are authorized to practice before *the patent bar." Ellis-Foster,* supra 159 F.Supp. at 919; with Judge Kaufman's reference to "lawyers who are not members *of the state bar* \* \* \*", *Georgia-Pacific,* supra 18 F.R.D. at 465;

and Mr. Chief Justice Warren's reference to agents "now registered and entitled to practice before the Patent Office, regardless of whether they are members of *the bar* or not." *Sperry,* supra 373 U.S. at 394, 83 S.Ct. at 1331 [Emphasis added throughout].

The same conclusion was also reached in an earlier suit involving the very patent agent, Michael Striker, now before this Court. Kent Jewelry Corp. v. Kieffer, 12 N.Y.S.2d 113 (N.Y.Sup.Ct.1952).

Nor can the Court find any support for plaintiff's position in the passage which he quotes from the *Ellis-Foster* decision. Plaintiff's Memorandum, p. 2. In *Ellis-Foster*, Judge Meaney thought the privilege should be afforded communications with attorneys in regard to patent applications [3] precisely because he doubted the performance of similar duties by patent agents as well should deprive the attorney of his special "status as a lawyer." 159 F.Supp. at 920. In addition, the Judge held that the mere fact that a patent agent might have been hired to prosecute the application rather than the lawyer who was in fact engaged should not deprive the communications to the lawyer of the privilege. Obviously, if he had deemed patent agents within the scope of the privilege, that question could not have arisen.

Finally, plaintiff states that in *International Minerals & Chemicals Corp.*, supra, production of communications with patent agents, or solicitors, or attorneys was sought, and that "Judge Morgan held that such correspondence was within the attorney-client privilege." Plaintiff's Memorandum, p. 3. In fact, while the Motion Under Rule 34 in *International* did make such a broad request the only documents in dispute which were held privileged all involved attorneys, with one exception and he was the direct subordinate of an attorney as required under the United Shoe test. 162 F.Supp. at 139.

Unlike the exclusionary rules of evidence such as those against hearsay, doctrines of privilege are not founded on fear that the evidence is untrustworthy, but rather on independent legal or social policies. The acknowledged purpose of the attorney-client privilege is to facilitate our adversary system of litigation by encouraging full disclosure to one who may someday represent his client in such litigation before the courts. While the lawyer's oath and code of ethics, which are also required of patent agents, provide an added reason for the client's trust, they are not the source of the privilege. In light of the general trend to limit such independent privileges to the essential requirements of their purpose, McCormack, EVIDENCE, § 81 at 104–165; MetalSalts Corp. v. Weiss, 75 N.J. Super. 291, 299, 184 A.2d 435 (Ch. 1962), the attorney-client privilege has not been extended to non-attorney practitioners who engage in administrative representation short of actual litigation in the courts.[4]

The plaintiff, having presented no compelling reason why this Court should depart from that well-established rule, shall be directed to produce the required documents for examination.

Let an appropriate order be submitted.

---

3. Judge Leahy, on the other hand, would deny the privilege to communications made in regard to patent applications even if an attorney is involved, because preparing and prosecuting applications "are not hallmark activities of attorneys." 121 F.Supp. at 794.

4. While the prosecution of a patent application may be opposed by intervenors before the Patent Office, the hearings are not considered full litigation of the issue with the res judicata effect accorded a judicial decision.