**BURLINGTON INDUSTRIES**

v.

**EXXON CORPORATION and Amtech, Inc.**

**Civ. A. No. 72–1014–M.**

United States District Court,
D. Maryland.

Oct. 21, 1974.

See also D.C., 379 F.Supp. 754.

Thomas Waxter, Jr., Stephen D. Lang-
hoff, and Semmes, Bowen & Semmes,
Baltimore, Md., Wallace D. Newcomb,
James C. McConnon, Frank J. Benasutti
and Paul & Paul, Ralph W. Brenner and

Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for plaintiff.

John W. Avirett, 2d, Baltimore, Md., and Karl W. Flocks and Sheridan Neimark, Washington, D. C., for defendant Exxon Corp.

Melvin J. Sykes, Baltimore, Md., for defendant Amtech, Inc.

## OPINION

JAMES R. MILLER, Jr., District Judge.

Defendant Exxon Corporation (Exxon) has moved to compel discovery pursuant to Rule 37, F.R.Civ.P. Exxon's motion arises from an action filed by the plaintiff alleging generally that Exxon has infringed plaintiff's patent. Plaintiff seeks to withhold many of the numerous documents sought by Exxon, claiming that the documents are privileged and thus immune from discovery. Pursuant to a court order of September 24, 1973, plaintiff has classified approximately 720 documents which it claims are privileged into 17 categories (Paper No. 45). According to plaintiff, its claims of privilege are made in response to Exxon's interrogatories 269, 270, 271, 272, 273, 274, 275, 276, and 277 (Paper No. 45).

This court had determined, with the agreement of counsel, to appoint a master to appraise the applicability of plaintiff's claims of privilege to the numerous documents. The legal criteria to be used by the master in making his recommendations to the court shall be in accordance with the general principles herein set forth.

■ The master shall examine *in camera* such of the contested documents as he shall believe it necessary to examine in order to perform his responsibilities. To the extent that the master deems it appropriate to do so under the principles set forth herein, he may recommend the excision of parts of documents which he finds to be privileged whereas other parts are found by him to

be discoverable. In the event the master determines that some or all of those documents which he recommends be produced should be produced only subject to a protective order under Rule 26(c), F. R.Civ.P., the master shall recommend to the court the terms of such protective order.

## I. *The Attorney-Client Privilege and the Work Product Doctrine in General*

■ The purpose of the attorney-client privilege is to encourage the complete disclosure of information between an attorney and his client and to further the interests of justice. Confidential communications between the attorney and the client which fall within the purview of the privilege are thus rendered immune from discovery. 8 Wigmore on Evidence § 2291 (McNaughton Rev. 1961); see also Kearney & Trecker Corp. v. Giddings & Lewis, Inc., 296 F. Supp. 979 (E.D.Wis.1969); Scourtes v. Fred W. Albrecht Grocery Co., 15 F.R.D. 55 (N.D.Ohio 1953).

In United States v. United Shoe Machinery Corp., 89 F.Supp. 357 (D.Mass. 1950), Judge Wyzanski set forth the requisites of a justified claim of the attorney-client privilege:

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and

(b) not waived by the client." (89 F.Supp. at 358–359).

■ The requirement that the communication be made "without the presence of strangers" means that the communication must have been intended as confidential, i. e., not intended to be related to others. International Business Machines Corp. v. Sperry-Rand Corp., 44 F.R.D. 10 (D.Del.1968); United States v. Tellier, 255 F.2d 441 (2d Cir. 1958).

■ The work product doctrine assures an attorney that his private files shall, in the absence of special circumstances, remain free from intrusions of opposing counsel. Those documents prepared in anticipation of litigation and constituting an attorney's "work product" are generally discoverable only upon a showing of unusual hardship and need by opposing counsel. Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Kearney, supra,* 296 F.Supp. at 981. *See also,* Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480 (4th Cir. 1973); Rule 26(b)(3), F.R.Civ.P.

In those situations in which work product is discoverable, the court is bound to take measures to "protect against disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 26(b)(3), F.R.Civ.P.

II. *Applicability of Privilege Principles to Patent Cases*

In its memorandum in support of its motion, Exxon contends that the plaintiff has improperly claimed a privilege for communications involving a public document. Since a patent is a public document, Exxon argues that any communication involving the validity, scope or enforceability of the patent in issue cannot be withheld from the court. (Paper No. 46 at 7, 9; Paper No. 62 at 24). To withhold such communications would, in Exxon's estimation, be both a fraud on the court and a violation of the public interest.

■ In support of its position, Exxon relies heavily on Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D.Del.1954). In *Zenith* Chief Judge Leahy states that there is a privilege only if the person to whom the communication is made "is acting as a lawyer in connection with this communication." 121 F.Supp. at 794. In his view, attorneys "do not 'act as lawyers' when not primarily engaged in legal activities; when largely concerned with technical aspects of a business or engineering character . . . or the scope of public patents . . . ." 121 F. Supp. at 794. Thus, when attorney-employees of a corporate patent department are engaged in essentially nonlegal work, neither the attorney-client privilege nor the work product exemption attaches. Chief Judge Leahy, however, does state that " . . . one blanket ruling . . . would unnecessarily risk inaccuracies of generalization." 121 F.Supp. at 793.

■ This court fully recognizes that "[t]he possession and assertions of patent rights are 'issues of great moment to the public.'" Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 815, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945), citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). In *Precision Instrument*, the Court said:

"A patent by its very nature is affected with a public interest. As recognized by the Constitution, it is a special privilege designed to serve the public purpose of promoting the 'Progress of Science and useful Arts.' At the same time, a patent is an exception to the general rule against monopolies and to the right to access to a free and open market. The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that

patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope." (324 U.S. at 816, 65 S. Ct. at 998).[1]

Without minimizing the legitimate public interest in all aspects of a patent, this court holds that both the attorney-client privilege and the work product doctrine are applicable, under proper conditions, to patent cases. Natta v. Zletz, 418 F.2d 633 (7th Cir. 1969); In re Natta, 410 F.2d 187 (3rd Cir. 1969); Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968); Jack Winter, Inc. v. Koratron Co., 54 F.R.D. 44 (N.D.Cal.1971); Collins & Aikman Corp. v. J. P. Stevens & Co., 51 F.R.D. 219 (D.S.C.1971); Stix Products, Inc. v. United Merchants & Manufacturers, Inc., 47 F.R.D. 334 (S. D.N.Y.1969); Air-Shield, Inc. v. Air Reduction Company, 46 F.R.D. 96 (N.D. Ill.1968); Chore-Time Equipment, Inc. v. Big Dutchman, Inc., 255 F.Supp. 1020 (W.D.Mich.1966).

*In re Natta, supra,* involved a discovery proceeding under 35 U.S.C. § 24, ancillary to a proceeding pending before the Board of Patent Interferences of the United States Patent Office. The District Court had denied the appellant the right to inspect certain documents of the appellee. Appellants argued that the paramount federal policy of full disclosure with respect to patents precluded the assertion of the attorney-client privilege or work product immunity in order to deny appellant access to information pertaining to the pending patent application. The Third Circuit, however, disagreed:

> "We fully recognize in such situations the public interest in full disclosure and high standards of candor and good faith expected of all parties. We cannot conclude, however, that the proper application of work product and attorney-client privilege will be detrimental to the public interest or offend paramount federal patent policy whenever a patent solicitation is involved." (410 F.2d at 190–191).

In Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968), the issues also involved production of documents in connection with interference proceedings in the Patent Office. With respect to the attorney-client privilege, the court stated:

> "We recognize that in patent proceedings the applicant must observe the highest degree of candor, honesty, and good faith. In our opinion this does not foreclose the assertion of a claim of privilege in a patent proceeding. The attorney-client privilege is designed 'to facilitate the administration of justice,' [citation omitted] in order 'to promote freedom of consultation of legal advisors by clients.' [citation omitted]. We see no reason why this long-established principle should not

---

1. In *Precision Instrument,* the Patent Office had declared an interference between certain claims in two pending patent applications, one filed by Automotive's predecessor and one filed by Precision Instrument's predecessor. The two applicants later settled the interference proceedings by entering into three contracts which, in part, conceded Automotive's priority. The settlement agreements allowed the interference proceedings to be terminated in favor of Automotive's predecessor without disclosing to the Patent Office the perjured statements of which it had knowledge and upon which the patent application by Precision Instrument's predecessor had been based. Such failure to disclose was held to be a violation of the duty which all parties to Patent Office proceedings have to report all facts concerning fraud underlying patent applications then pending. When Automotive later sought to sue Precision Instrument for patent infringement, the Court refused to enforce the settlement agreements on the ground that Automotive had violated its duty to disclose and was therefore without "clean hands." While standing in part for the admitted proposition of the great public interest in patent proceedings, *Precision* factually involved collusion among patent applicants to prevent certain information from reaching the Patent Office, and no questions of work product doctrine and attorney-client privilege were involved in that case.

be applied to patent cases. The public interest is in the development of the truth . . . . The duty of full disclosure differs from the freedom of consultation with lawyers. . . . [A]n automatic waiver of the privilege does not occur when a patent controversy is presented." (392 F.2d at 691–692).

The court also found that the work product doctrine applied to patent cases. "An attorney's work in the patent law field should be as much his own as it is in other areas of law." 392 F.2d at 693.

In Collins & Aikman Corp. v. J. P. Stevens & Co., *supra*, the principles of attorney-client privilege and work product immunity were again found applicable to patent cases.

"The court is not impressed with defendant's argument to the effect that those privileges . . . are deprived of real significance where patents are the subject of the communication. The argument is based in the main upon Judge Leahy's order in Zenith Radio Corp. v. Radio Corp. of America [citation omitted] and Georgia-Pacific Plywood Co. v. United States Plywood Corp., 18 F.R.D. 463 (S.D.N.Y.1956). The rationale of those cases seems to be that the information which patent attorneys utilize in preparing their opinions or advising their clients is in the public domain, not confidential, so no privilege can attach. A second basis for these decisions is that in evaluating the merits of the patent the attorney acts, not as an attorney, but as a technician.

"More recent cases convince this court that those cases have lost much of their vitality. Work product and attorney-client privileges exist in the field of patent law and must be respected by the court in regulating discovery. . . . The policy which dictated the creation of the privilege

applies with equal force to the area of patent law." (51 F.R.D. at 220–221).

III. *Waiver*

In finding both the attorney-client privilege and the work product doctrine applicable to patent cases in general, this court does not find that plaintiff has waived these immunities merely by bringing a suit which places patent validity and enforceability in issue.

"Some [privileges], such as the attorney-client privilege, could not normally be held to be waived by bringing or defending a suit, for in the attorney-client situation the privilege is designed to promote confidential communications that may well deal with the very suit in question." (4 Moore, Federal Practice, ¶ 26.60(6)).

In U. S. Industries, Inc. v. Norton Co., 174 USPQ 514 (N.D.N.Y.1972), and Honeywell, Inc. v. Piper Aircraft Corp., 50 F.R.D. 117 (M.D.Pa.1970), both district judges stated, in dicta, that the plaintiffs *may* have waived the claims of privilege which they asserted by instituting the suits and putting the validity of the patents and their infringement in issue. Nevertheless, neither court resolved the question.

IV. *The Corporate Client*

A. *The Control Group*

The attorney-client privilege does extend to corporations. Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314 (7th Cir. 1963). When a corporation seeks to invoke the attorney-client privilege, the communications generally must have been between counsel and the corporation's "control group." When determining what officers and employees of the company asserting a privilege are members of this group, the test is whether the person had the authority to control or substantially participate in a decision regarding action to be taken on advice of counsel,

or was a bona fide member of a group that had this power. Philadelphia v. Westinghouse Electric Corp., 210 F. Supp. 483 (E.D.Pa.1962); Garrison v. General Motors Corp., 213 F.Supp. 515 (S.D.Cal.1963); Ortiz v. H. L. H. Products Co., 39 F.R.D. 41 (D.Del.1965); Leve v. General Motors Corp., 43 F.R.D. 508 (S.D.N.Y.1967); Congoleum Industries Inc. v. G. A. F. Corp., 49 F.R.D. 82 (E.D.Pa.1969); Rucker v. Wabash R. Co., 418 F.2d 146 (7th Cir. 1969); Honeywell Inc. v. Piper Aircraft Corp., *supra*; *Cf.* Harper and Row Publishers, Inc. v. Decker, 423 F.2d 487 (7th Cir. 1970), aff'd, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971).

## B. *House Counsel*

■ The attorney-client privilege applies to confidential communications between members of the corporate control group and its attorneys acting in a legal capacity. "House" lawyers, acting as legal advisors, are within the purview of the attorney-client privilege under the same circumstances as "outside" counsel. Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968); American Optical Corporation v. Medtronic, Inc., 56 F.R.D. 426 (D.Mass. 1972); Air-Shield, Inc. v. Air Reduction Company, 46 F.R.D. 96 (N.D.Ill.1968); United States v. United Shoe Machinery Corp., *supra*.

Exxon contends that, for purposes of the attorney-client privilege, one person cannot be both attorney and client for different communications. (Paper No. 46 at 8). "In-house" counsel, according to Exxon, cannot play a dual role, personifying the corporate client in one instance and acting as an attorney in another instance. Thus Exxon asserts that the documents contained in plaintiff's categories I, III, and IV are not properly within the scope of the attorney-client privilege. The court must disagree with Exxon's proposition.

In Natta v. Zletz, *supra,* one group of documents withheld on a claim of privilege consisted of correspondence between "outside" and "house" counsel. The correspondence sought legal advice with respect to interference proceedings. The court found such communications clearly within the ambit of the attorney-client privilege.

"Such communications are essentially between the corporation and its outside attorneys, regardless of the legal qualifications of the "house" counsel. . . . [I]nsofar as inter-attorney communications or an attorney's notes contain information which would otherwise be privileged as communications to him from a client, that information should be entitled to the same degree of protection from disclosure. To hold otherwise merely penalizes those attorneys who write or consult with additional counsel representing the same client for the same purpose. As such it would make a mockery of both the privilege and the realities of current legal assistance." (418 F.2d at 637, including footnote).

In Dura Corporation v. Milwaukee Hydraulic Products, Inc., 37 F.R.D. 470 (E.D.Wis.1965), a trademark infringement action, the defendants moved for production of documents pursuant to Rule 34, F.R.Civ.P. Ten of the letters in dispute constituted correspondence between plaintiff's "outside" counsel and its "in-house" patent counsel, and contained legal advice. Consequently, the court found the correspondence clearly within the attorney-client privilege.

Confidential correspondence between two law firms or two "outside" lawyers representing the same client has also been held protected from disclosure as communication between co-counsel. Stix Products, Inc. v. United Merchants & Manufacturers, Inc., 47 F.R.D. 334 (S.D.N.Y.1969); Hesselbine v. von Wedel, 44 F.R.D. 431 (W.D.Okl.1968).[2]

---

**2.** In *Dura,* however, communications between "outside" co-counsel were afforded protection only on the basis of the work product doctrine, and not the attorney-client privilege.

In the same way, it is possible for "in-house" counsel to be the sole counsel with respect to certain advisory communications, and co-counsel with outside attorneys for other communications. It is also possible for "in-house" counsel, as a member of the corporate control group, to personify the corporate client in seeking legal advice from "outside" counsel.

Whether viewed as communications between client and counsel or as communications between co-counsel, those communications which otherwise meet the privilege requirements do not lose that protection merely because they occur between "in-house" and "outside" counsel.

## V. The Nature of Communications between Client and Attorney

### A. Confidential Requests for Legal Assistance

A basic element of communications within the attorney-client privilege is that the communications must be made by a client to an attorney in confidence for the purpose of obtaining legal advice and assistance. Philadelphia v. Westinghouse Electric Corp., *supra*. The privilege further extends to the attorney's legal advice and opinions which encompass the thoughts and confidences of the client. Natta v. Hogan, *supra;* American Optical Corp. v. Medtronic, Inc., *supra*; United States v. United Shoe Machinery Corp., *supra*.

Nevertheless, "[t]he mere fact that a person is an attorney does not render as privileged everything he does for and with a client." United States v. Bartone, 400 F.2d 459, 461 (6th Cir. 1968). Only those attorney-client communications pertaining to legal assistance and made with the intention of confidentiality are within the ambit of the privilege. United States v. Tellier, *supra*, 255 F.2d at 447. Although no express request for secrecy is necessary, a communication is not confidential if made in the presence of a third person who is not the agent or representative of either the attorney or client. 8 Wigmore, Evidence § 2311 (McNaughton Rev. 1961).

### B. Implied Requests for Legal Advice

While it is essential that communications between client and attorney deal with legal assistance and advice in order to be privileged, it is not essential that such requests by the client for legal advice be expressed.

In Jack Winter, Inc. v. Koratron Company, Inc., 54 F.R.D 44 (N.D.Cal.1971), the court found privileged those documents containing client requests for legal advice and attorney responses to them. Included in the court's privileged classification were documents from the client containing only implied requests for legal advice, and unsolicited communications from the attorney containing legal advice. The court stated:

"The remainder of the privileged documents involve either client communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon, or self-initiated attorney communications intended to keep the client posted on legal developments and implications, including implications of client activity noticed by the attorney but with regard to which no written request for advice from the client has been found." (54 F.R.D. at 46).

While certain advisory communications from the attorney to the client were not in direct response to a client request, it is evident that an ongoing attorney-client relationship existed. Moreover, the attorney would have been remiss in his duties were he not to keep his client informed of pertinent legal developments with respect to the matters for which his services were obtained. Consequently, both the implied requests for legal advice and the self-initiated attorney communications were properly protected.

## C. *Intracorporate Communications*

Although privileged communications between client and attorney need not pertain to express requests for legal advice, the question arises as to whether communications which are not directly between attorney and client can fall within the privilege.

In Eutectic Corporation v. Metco, Inc., 61 F.R.D. 35 (E.D.N.Y.1973), the plaintiffs challenged the validity of the defendant's patents and moved to compel the defendant to produce certain documents. The communications in question which the defendant sought to withhold involved five persons: the two co-inventors of the patents in question, the attorney retained by the defendant, a vice-president of the company who was a patent liaison to the attorney, and his assistant liaison. Since the attorney did not send any of the communications and was not the original recipient of them, the plaintiffs contended that the documents were merely intracorporate communications and thus outside the scope of the attorney-client privilege.

Although the court found no separate request from the attorney for information, it did find the documents exchanged contained information gathered "for the dominant purpose of facilitating the attorney's efforts to provide services to the client." 61 F.R.D. at 40. Moreover, either the information contained in the documents or the documents themselves were conveyed to the attorney.[3]

Without determining whether the four persons were members of the corporation's control group for purposes of invoking the attorney-client privilege, the court emphasized that the communications were restricted to four persons, three of whom were charged with responsibility for preparing patent applications, and one of whom was a co-inventor. Thus the court found them to be proper representatives of the corporate client.

The court relied on Rule 503(b)(4) of the Proposed Federal Rules of Evidence[4] and the purpose of the attorney-client privilege in finding that:

"... where the dominant purpose of the communication is to facilitate the rendition of legal services to the client, and the communication itself or the substance thereof is transmitted to the lawyer shortly thereafter, the fact that the communication, at its inception, is within the corporate structure rather than directly with the attorney does not automatically defeat the privilege." (61 F.R. D. at 39).

The court thus found privileged those documents prepared by the corporate representatives which were communicated in confidence to each other and ultimately to the attorney, and, though containing technical information, were primarily of a legal nature for the purpose of obtaining legal assistance. This

---

3. For example, documents 10 and 143–148 were memoranda exchanged between one co-inventor and the vice-president, resulting from a meeting both men had with the attorney. At that meeting, the attorney had requested certain information needed to draft the patent application.

4. The Proposed Federal Rules of Evidence have set forth the following general rule of privilege:
 "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client."
 (Proposed Federal Rules of Evidence, Rule 503(b), 56 F.R.D. 236 (1973)).

court subscribes to the view of the court in *Eutectic*. Those documents which are prepared at the direction of members of the control group to aid counsel in rendering legal assistance to the corporation, at the express or implied request of counsel, and which are primarily legal in nature, will not fall outside the scope of the attorney-client privilege merely because at their inception the communications were intracorporate.

It should be emphasized, however, that no privilege will attach for documents designed merely to communicate non-privileged business or technical data. Nor will the privilege attach when the element of confidentiality is lacking. Furthermore, no privilege will attach to those documents directed to the attorney for the purpose of shielding the documents from disclosure. *See* Natta v. Zletz, 418 F.2d 633 (7th Cir. 1969).

### D. *Communications Containing Nonlegal Data*

In United States v. United Shoe Machinery Corp., *supra*, Judge Wyzanski emphasized that the duty of a lawyer to both his client and society encompasses many important nonlegal considerations. Consequently, the attorney-client privilege, as to material which would otherwise come within the privilege, is not lost merely because a communication containing legal advice also contains relevant nonlegal information. 89 F.Supp. at 359.

The patent field itself is a highly technical area. Patent lawyers are frequently called upon precisely because their expertise extends to technical and scientific areas. The attorney-client privilege is not lost in a patent case merely because the communication contains technical data. Chore-Time Equipment, Inc. v. Big Dutchman, Inc., 255 F.Supp. 1020, 1023 (W.D.Mich. 1966); *see also*, United States v. United

Shoe Machinery Corp., *supra*, 89 F. Supp. at 359–360.

In order to invoke the privilege, however, the party seeking protection must make a clear showing that documents containing technical matters are communicated in confidence and are primarily legal in nature. There must be a finding that each document is involved in the rendition of legal assistance. *Eutectic, supra*, 61 F.R.D. at 41.

In the area of patent applications, the applicant is required to disclose certain information to the patent office before a patent will issue. 35 U. S.C. §§ 111, 112. The applicant has no discretion to withhold this information from the patent office and an attorney receiving it for use in preparing the patent application is acting as a mere conduit for the information. Therefore, the expectation of confidentiality necessary for the application of the attorney-client privilege is not present as to such information. Consequently, information concerning a description of the product, the processes used, and public use and sale for more than one year prior to the date of application, conveyed by the client to the attorney preparing a patent application, is technical and not privileged. Jack Winter, Inc. v. Koratron Company, 50 F.R.D. 225 (N.D.Cal. 1970); Jack Winter, Inc. v. Koratron Company, Inc., 54 F.R.D. 44, 46–47 (N. D.Cal.1971). Ellis-Foster Company v. Union Carbide & Carbon Corporation, 159 F.Supp. 917 (D.N.J.1958). However, those documents or portions thereof which, while containing considerable technical factual information, are nonetheless primarily concerned with asking for or granting legal advice, remain privileged. Jack Winter, Inc. v. Koratron Company, Inc., 54 F.R.D. at 46–47.

It should also be noted that, contrary to Exxon's contention, the attorney-client privilege is not lost merely because a non-attorney may have been

able to conduct the proceedings before the Patent Office. *Ellis-Foster, supra,* 159 F.Supp. at 920. *Contra,* Georgia Pacific Plywood Co. v. United States Plywood Corp., 18 F.R.D. 463 (S.D.N.Y. 1956).

## VI. *Patent Agents as Attorneys*

 Plaintiff contends that communications between its outside counsel and foreign patent agents are within the attorney-client privilege (Paper No. 64 at 16). With this contention the court must disagree.

 The attorney-client privilege does extend to the agents or immediate subordinates of the attorney, such as the attorney's secretary. 8 Wigmore, Evidence § 2301 (McNaughton Rev. 1961). The agents of the attorney for purposes of the privilege, however, are those persons essential to the lawyer's performance of legal services. 8 Wigmore, Evidence § 2301 (McNaughton Rev. 1961). In Zenith Radio Corp. v. Radio Corp. of America, *supra,* Chief Judge Leahy included general office clerks, law clerks and junior attorneys under the direct personal supervision of the attorney through whom the privilege is obtained, within the scope of "immediate subordinates." While this court accepts the reasoning of Judge Leahy in this regard, it is certainly true that the privilege was not intended to permit the attorney to dub all persons with whom he has contact as his agents, thereby cloaking all such communications with protection. Rayette-Fabergé, Inc. v. John Oster Manufacturing Co., 47 F.R.D. 524 (E.D.Wis.1969) (correspondence between plaintiff's counsel and a firm of patent agents was not protected by the privilege, because the patent agents were not attorneys). *See also* Joh. A. Benckiser G. m. b. H., Chemische Fabrik v. Hygrade Food Products Corp., 253 F. Supp. 999 (D.N.J.1966); McCormick, Evidence § 88, at 180–181 (2d ed. 1972).

## VII. *Fraud Vitiates the Attorney-Client Privilege*

 The attorney-client privilege is not vitiated merely because a client commits a fraudulent act. Only where the confidential communications between attorney and client concern advice in preparation for the commission of a criminal or fraudulent act, or in the actual commission thereof, is the privilege abrogated. 8 Wigmore, Evidence § 2298 (McNaughton Rev. 1961).

In Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933), the Supreme Court emphasized that the privilege for communications between attorney and client would not tolerate abuse. It stated:

"There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law." (289 U.S. at 15, 53 S.Ct. at 469).

*See also,* United States v. Bob, 106 F.2d 37 (2d Cir. 1939), cert. denied, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939). The same viewpoint is now expressed in Rule 503(d) of the Proposed Federal Rules of Evidence. Rule 503(d) states:

"There is no privilege under this rule . . . [i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." (56 F.R.D. at 236).

 The mere allegation of fraud, however, is not sufficient to terminate the attorney-client privilege. *Prima facie* evidence of fraud, not mere suspicion of fraud, is required to abrogate the privilege. Clark v. United States, *supra,* 289 U.S. at 15, 53 S.Ct. 465; Natta v. Zletz, *supra;* United States v. Bob, *supra;* Jack Winter, Inc.

v. Koratron Company, 50 F.R.D. 225 (N.D.Cal.1970). The production of otherwise privileged documents may properly be compelled at any time during the proceedings that the court becomes satisfied that a *prima facie* case of fraud exists. Natta v. Zletz, *supra*, 418 F.2d at 636.

In Paper No. 62 at 80, Exxon lists three reasons why the attorney-client privilege should be vitiated. These are:

"(a) the 'on sale' related to 'the Whitaker sale' proved by Burlington in Burlington v. Letter Public Use Proceeding [fraud on the Patent Office and fraud on the Court]

"(b) the unlawful price discrimination involving conspiracy or connivance between Burlington and Amoco . . .

"(c) the fraudulent assertion [illegitimate scope] of the patent in suit and the acceptance of tribute for constructions within the public domain [inequitable conduct]."

At page 45 in Paper No. 62, Exxon alleges five ways in which plaintiff has misused the patent in suit. These include 1) withholding from both the court and the patent office the "on sale" defect of the patent; 2) charging royalties for the sale of an unpatented product; 3) favoring one licensee to the detriment of competition; 4) seeking improperly to enforce the patent; 5) engaging in a conspiracy in restraint of trade.

Exxon has detailed at great length in its briefs on this discovery question its allegations of misuse. Yet the issue which this court now faces concerns only the scope of the attorney-client privilege and work product immunity in discovery proceedings and is not an inquiry into the ultimate merits of Exxon's allegations of misuse of the patent in suit. An allegation of misuse is not tantamount to an allegation of confidential communications between attorney and client in furtherance of a fraud.

It is only when a *prima facie* showing of misuse of such communication is made that the privilege will be vitiated.

Misuse of a patent may well result in the denial of relief to one alleging patent infringement. Nevertheless, the determination of such misuse is an ultimate issue to be resolved by the court. It is not germane to proceedings pursuant to a motion to compel production of documents.

Exxon's authorities with respect to misuse, moreover, are inapposite. In Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), for example, the Supreme Court did find that misuse of a patent precludes a party from enjoining infringement of a patent. The Court, however, was dealing with the merits of the case and not with preliminary discovery matters.

The attorney-client privilege, then, will not be abrogated by mere allegations of fraud on the patent office or fraud on the court as opposed to a *prima facie* showing, nor will it be abrogated by allegations, however well supported, of misuse. It will, however, be abrogated upon a *prima facie* showing that communications between attorney and client were sought or obtained to assist in the commission of a fraud or a crime.

### VIII. *The Work Product Doctrine*

#### A. *Applicability to Patent Cases*

In categories VI, VII, VIII, IX, and X, plaintiff asserts a privilege from disclosure based on the work product doctrine. As previously noted in Part II of this opinion, the work product doctrine applies to patent cases.

Documents containing mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party, prepared in anticipation of litigation, are not denied the protection of the work product doctrine merely because the documents in-

clude technical data on which those mental impressions, conclusions, opinions, or theories are based. The work product doctrine, however, cannot be used to protect documents relating to research, tests, and experiments which are to be disclosed to the Patent Office at the time of an application for a patent since the documents do not constitute the results of an attorney's efforts to represent his client in a potentially adversary legal proceeding, but, instead, result from a legal duty to produce the total information for the Patent Office. *See* Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); Natta v. Hogan, 392 F.2d at 693; Natta v. Zletz, 418 F.2d 633, 637 (7th Cir. 1969).

While comments upon technical information by attorneys or others in the preparation of the prosecution or defense of Interference Proceedings before the Patent Office may not come within the attorney-client privilege, they do constitute attorneys' work product, subject to discovery by opposing parties in a subsequent lawsuit only upon an appropriate showing under the Federal Rules of Civil Procedure. Natta v. Zletz, *supra*, at 637–638.

### B. *Documents Prepared in Anticipation of Litigation*

According to the Advisory Committee notes to the 1970 Amendments to the Federal Rules, Rule 26(b)(3) expands the doctrine of attorney work-product found in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451 (1947), so as to include as protected materials those which were prepared by non-attorneys so long as the preparation was "in anticipation of litigation or preparation for trial." 48 F. R.D. 487, 502 (1970).

The question then becomes one of when a document made by a non-lawyer or a lawyer acting in a nonlegal capacity may be deemed to have been prepared in anticipation of litigation. The Advisory Committee noted in this regard that materials assembled in the ordinary course of business or for non-litigation purposes are not under the partial immunity granted by subsection (b)(3). 48 F.R.D. 487 at 501. Such materials do not fall either under the work product doctrine as it existed prior to 1970, Goosman v. A. Duie Pyle, Inc., 320 F.2d 45 (4th Cir. 1963), or under the new Rule 26, 4 Moore, Federal Practice ¶ 26.64 [2].

In Thomas Organ Co. v. Jadranska Slobodna Plovidba, 54 F.R.D. 367 (N.D. Ill.1972), the court found that documents and investigative reports compiled by a non-attorney for an attorney and/or under his general direction in anticipation of litigation were protected from discovery absent the requisite showing of need. Excluded from protection, however, were documents prepared in the regular course of business. The court stated:

> " . . . that *any* report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new Rule 26(b)(3) and (b)(4)." (54 F.R.D. at 372).

In order to satisfy the requirement that documents be prepared in anticipation of litigation, it is not necessary that the documents be prepared after litigation has been commenced. The work product doctrine applies to material prepared when litigation is merely a contingency. American Optical Corporation v. Medtronic, Inc., 56 F.R.D. 426 (D.Mass.1972); Stix Products, Inc. v.

United Merchants & Manufacturers, Inc., 47 F.R.D. 334 (S.D.N.Y.1969). *See also,* Transmirra Products Corp. v. Monsanto Chemical Co., 26 F.R.D. 572, 579 (S.D.N.Y.1960); Vilastor-Kent Theatre Corp. v. Brandt, 19 F.R.D. 522 (S.D.N.Y.1956).

■ In *Stix, supra,* the court found the work product doctrine applicable although the attorney's opinion was not prepared in the actual course of litigation. Rather, it was induced by a threat of litigation received by the attorney's client. The court stated:

> "If the prospect of litigation is identifiable because of specific claims that have already arisen, the fact that, at the time the document is prepared, litigation is still a contingency has not been held to render the privilege inapplicable. . . ." (47 F.R.D. 337).

It is not enough, however, that the mere *possibility* of litigation exists. In *Stix,* the court noted that at the time of the preparation of the documents, litigation was likely. In *Transmirra, supra,* the court noted that Monsanto could reasonably anticipate an *imminent* lawsuit.

### C. *The Need-Hardship Exceptions*

■ Even if the documents are prepared in anticipation of litigation, the protection afforded in Rule 26(b)(3) is not absolute. Discovery may still be had upon a showing of "substantial need" and an inability "without undue hardship" to obtain the information by other means. The factors to be considered by the master in deciding whether to recommend an order of disclosure are (1) the importance of the information sought and (2) the difficulty the party seeking discovery will face in obtaining substantially equivalent information from other sources if discovery is denied. 4 Moore, Federal Practice ¶ 26.64[3]. See Hickman v. Taylor, *supra,* 329 U.S. at 511, 67 S.Ct. 385; Natta v. Hogan, *supra,* 392 F.2d at 693.

### D. *The Work Product Doctrine in Subsequent Litigation*

■ The qualified immunity of documents within the work product doctrine does not end when the lawsuit for which the documents were prepared terminates. In Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480 (4th Cir. 1973), the Fourth Circuit found the rationale of *Hickman* as applicable to closed cases as to open cases. The court expressly stated that the protection afforded by the work product doctrine in one action continues in a subsequent action, thereby preventing discovery of work product materials in a later lawsuit.

### IX. *Confidential Communications Between Party's Counsel and Nonparty Third Person with whom Party had a Community of Interest*

In plaintiff's categories V, XIII, XVI, and XVII, plaintiff asserts a privilege for confidential communications exchanged between plaintiff's counsel and the representatives of a corporation not a party to the present action. Plaintiff contends that the privilege exists because at the time of the communications plaintiff had a community of interest with respect to the patent in issue. Plaintiff alleges that at the time of the communications in question, plaintiff and Standard Oil Company (Indiana) were joint licensors of patents. The patent in controversy in this action was included in the joint licensing program. Consequently, the joint licensors had a mutual interest in the success of the patent.

Rule 503(b) of the Proposed Federal Rules of Evidence is in accord with plaintiff's position. It states in part:

> "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose

of facilitating the rendition of professional legal service to the client . . . (3) by him or his lawyer to a lawyer representing another in a matter of common interest . . . ." (56 F.R.D. at 236).

In Stanley Works v. Haeger Potteries, Inc., 35 F.R.D. 551 (N.D.Ill.1964), the plaintiff objected to several interrogatories submitted by the defendants. The interrogatories sought identification of all correspondence between plaintiff and its partner in a joint licensing program for the exploitation of the patent in controversy. Although the partner was not a party to the action, the correspondence was in preparation for the trial.

The court found that as a result of the joint licensing program, the partner shared the defendant's concern for the outcome of the litigation; moreover, the partner was aware of possible litigation involving itself. Although the court required the communications to be identified, it relied on the work product immunity in not requiring their production. "Where attorneys for parties having a mutual interest in litigation exchange their work product, it remains protected by a qualified privilege." 35 F.R.D. at 555.

In Transmirra Products Corp. v. Monsanto Chemical Company, 26 F.R.D. 572 (S.D.N.Y.1960), the plaintiff submitted interrogatories to determine the nature of the legal assistance rendered by the defendant to a third party who had previously been charged by the same plaintiff, in a separate action, with infringement of the patent in issue. The plaintiff contended that the communications were needed to prove the alleged conspiracy to infringe.

At the time of the communications between attorneys for the initial defendant and the later defendant, the court found Monsanto, not then a defendant, reasonably anticipated a similar lawsuit by the same plaintiff. Consequently, the court found that the communications were prepared "with an eye toward litigation." In view of the community of interest linking Monsanto and the initial defendant, the court recognized the need of the attorneys to communicate:

"One could not deny the advantages of, and even the necessity for, an exchange or pooling of information between attorneys representing parties sharing such a common interest in litigation, actual or prospective." (26 F.R.D. at 579).

Thus the inter-attorney communications were held protected from disclosure by the work product doctrine.

In Stix Products, Inc. v. United Merchants & Manufacturers, Inc., *supra*, an action to determine the validity of a patent was consolidated with an action for infringement. United Merchants and Manufacturers (UMM), the defendant, sought production of opinions concerning patent validity rendered to a third-party witness by a law firm. The opinions were subsequently disclosed to counsel for plaintiff by the third-party witness. Although the third-party witness was not a party to the action, the court found that the opinions were prepared in anticipation of litigation and constituted work product. Moreover, the court held that the protection afforded by the work product doctrine was not waived by the confidential disclosure of the opinions to the attorneys for plaintiff. As a customer of the plaintiff, itself threatened with litigation for infringement by UMM, the third-party witness had an economic stake in the outcome of the litigation. Its interest in the controversy was substantially identical to that of the plaintiff. Such community of interest between plaintiff and the third-party witness justified continuation of work product protection, in the absence of a showing by the defendant of special need.

In Vilastor-Kent Theatre Corp. v. Brandt, 19 F.R.D. 522 (S.D.N.Y.1956), the plaintiff moved for the production of a memorandum in an action alleging violation of antitrust laws. The docu-

ment in controversy was not prepared by the defendant. Rather, it was prepared by attorneys for a nonparty threatened by the plaintiff with litigation stemming from the same alleged illegality. In order to avoid a lawsuit involving the two companies as codefendants, counsel for the potential codefendant sent the memorandum to counsel for the defendant.

The court rejected plaintiff's contention that the memorandum lost its work product protection when sent by an attorney for one client to an attorney for the defendant. The court found that the work product doctrine applied to the exchange of a confidential legal memorandum between attorneys of potential co-parties, provided it was prepared in anticipation of litigation.

 Unlike the nonparty in *Transmirra,* there is no evidence here that Standard Oil (Indiana) has ever been sued in a prior action as a result of the patent now in question. Nor is there any evidence to show that Standard Oil has been threatened with litigation comparable to the threat received by the potential codefendant in *Vilastor,* or the threat of litigation received by the third-party witness in *Stix.* Nevertheless, joint licensors do share a mutual interest in the success of their joint licensing program. Such mutual interest may well necessitate continued communication between the attorneys of the joint licensors. Upon a proper showing of the existence of such joint licensing program, documents prepared by attorneys in anticipation of litigation involving their clients, and exchanged in confidence between attorneys representing the joint licensors, will not lose the protection of the work product doctrine. Unless a proper showing of the need-hardship exception is made, exchange of work product between attorneys for plaintiff and Standard Oil (Indiana) will remain immune from discovery.

## X. *Confidential Communication in Connection with Settlement of a Lawsuit*

In categories XIV and XVII, plaintiff asserts a privilege for confidential communications between two adverse parties in the course of settlement of a controversy existing between them. Only the plaintiff is a party to the present action.

 Public policy requires the courts to encourage the voluntary settlement of civil controversies, Autera v. Robinson, 136 U.S.App.D.C. 216, 419 F.2d 1197 (1969); Petty v. General Acc. Fire & Life Assur. Corp., 365 F.2d 419 (3rd Cir. 1966); Stanspec Corp. v. Jelco, Inc., 464 F.2d 1184 (10th Cir. 1972). During settlement negotiations, the confidentiality necessary to be present to assert an attorney-client or work product privilege is not lost by disclosure of pertinent information to opposing counsel or control group members. International Business Machines Corp. v. Sperry-Rand Corp., 44 F.R.D. 10 (D.Del. 1968). Any question of waiver of the attorney-client privilege or work product immunity during settlement negotiations must be considered in light of the importance of facilitating such settlement.

In International Business Machines Corp. v. Sperry-Rand, *supra,* Sperry disclosed confidential information relating to defects in a computer which Sperry believed had been excused. The court found that the entire attorney-client privilege was not waived by such disclosures. Rather, the court found the waiver limited to the narrow subject of defects in the computer contained in the confidential communications.

In American Optical Corporation v. Medtronic, Inc., 56 F.R.D. 426 (D.Mass. 1972), the two parties had entered a license agreement with respect to a patent issued to American Optical (AO). In a consolidated patent invalidity-patent infringement action between the parties,

AO sought to discover all of Medtronic's attorney's memoranda stemming from the license agreement negotiations. AO contended that Medtronic waived its privilege with regard to all such legal documents by disclosing legal opinions during negotiations for the license. The court, however, expressly rejected AO's position. Citing International Business Machine Corp. v. Sperry-Rand Corp., the court stated:

". . . I reject the notion that a party waives the privilege if its lawyer, bargaining on its behalf, contends vigorously and even in some detail that the law favors his client's position on a point in issue . . .. Bargaining, like litigation itself, partakes of the adversary procedure. Negotiated settlements are to be encouraged, and bargaining and argument precede such settlements. Clients and lawyers should not have to fear that positions on legal issues taken during negotiations waive the attorney-client privilege so that the private opinions and reports drafted by an attorney for his client become discoverable." (56 F.R.D. at 431).

██ ██ This court is in agreement with the view that confidential information disclosed during settlement negotiations does not constitute a waiver of the entire attorney-client or work product privilege. It is a waiver limited to that information disclosed during the negotiations. Nevertheless, the court is not unmindful of the fact that privileges cannot be used as both a sword and a shield. A party cannot choose to disclose only so much of allegedly privileged matter as is helpful to his case. 8 Wigmore, Evidence § 2327 (McNaughton Rev. 1961). Once the party begins to disclose any confidential communication for a purpose outside the scope of the privilege, the privilege is lost for all communications relating to the same matter.

An order will be entered appointing a master for the purposes herein set forth.